## GEORGE A. SAWYER *vs.* STATE BOARD OF HEALTH.

Middlesex.    Jan. 17. — May 4, 1877.   MORTON, ENDICOTT & SOULE, JJ., absent.

Jan. 15. — July 29, 1878.   ENDICOTT & SOULE, JJ., absent.

A person aggrieved by an order of the state board of health, under the St. of 1871, *c.* 167, § 2, prohibiting his carrying on a certain trade, and adjudging it to be a nuisance, has a right of appeal to a jury, although such right is not expressly given by this statute.

A petition for a jury, to " either alter or annul in full " an order of the state board of health, alleged that the petitioner carried on the business of slaughtering, and set forth the order, which directed the discontinuance of the business of " slaughtering and rendering." The jury returned a verdict that they did not affirm the order in full, and made certain " special findings " that the " jury alter the order " by permitting the continuance of the business of " slaughtering " under certain restrictions enumerated, both the verdict and findings being signed by the foreman and affirmed in court. *Held,* that the verdict and findings were sufficiently clear and formal.

Under the Gen. Sts. *c.* 26, § 5, providing that a board of health " shall make such regulations as it judges necessary for the public health and safety, respecting nuisances, sources of filth and causes of sickness," a jury, on appeal from an order of the state board of health prohibiting the business of " slaughtering and rendering" on certain premises, may alter the order by permitting the business of " slaughtering " under restrictions that the cellar under the slaughter-house be concreted in concave form, that no swine be kept in or under the slaughter-house, that all offal and offensive matter be removed from the premises before a certain hour of the day of killing, in covered, water-tight boxes or tanks, and that the premises be kept at all times in a condition of neatness and cleanliness acceptable to the local board of health.

PETITION, filed May 12, 1876, to the Superior Court, alleging that on April 3, 1876, the petitioner was, and for seven years before had been, a butcher, and lawfully engaged in the business of slaughtering cattle and sheep on premises occupied by him in Watertown ; that this business was not at any time a nuisance, or hurtful to the inhabitants of Watertown, or dangerous to the public health, and the exercise thereof was not at any time at-

tended by noisome or injurious odors, and was not at any time otherwise injurious to the estates of the inhabitants of Watertown, or contrary to public comfort and convenience; that the state board of health, on said April 3, prohibited the exercise of the petitioner's trade and business on and after May 15, 1876, and caused to be served upon him, on April 14, 1876, a copy of their order of prohibition, as follows:

"Commonwealth of Massachusetts. State Board of Health. Boston, April 5, 1876. To George A. Sawyer, of the town of Watertown, in the county of Middlesex: You are hereby notified that at a meeting of the state board of health, held at Boston, in the county of Suffolk, on the third day of April, 1876, it was ordered, on the petition of W. H. Ingraham and four others, and after a hearing of the parties, that George A. Sawyer, of Watertown, be and he hereby is directed to discontinue the business of slaughtering and rendering on the premises now occupied by him, on and after the fifteenth day of May, 1876. And it is adjudged and determined by this board, that the premises are noxious and offensive, and that the public health and the public comfort and convenience require that the said George A. Sawyer be ordered, as aforesaid, to cease and desist from carrying on the said business on the said premises, on and after the fifteenth day of May, 1876. And you are hereby directed to comply in all respects with the requirements of the said order, under penalty of what may follow thereon."

The petitioner further alleged that he thereupon obeyed said order, and thenceforth desisted and refrained from the carrying on of his trade of butcher, and of slaughtering cattle and sheep, on the premises; and that "said order of prohibition was and is illegal and unjust, and that he is aggrieved thereby, and appeals hereby therefrom, and applies to the Superior Court, now in session in said county of Middlesex, for a jury to hear, pass upon and determine the questions determined by said state board of health in the premises, in issuing and serving said order of prohibition upon him, and that the jury may either alter or annul in full said order of prohibition, and that he may recover his just damages caused to him by service of said order of prohibition as aforesaid, and costs; and that the court may issue such order of notice in the premises to those who should be made respondents, as to said court shall seem meet."

On this petition, an order of notice was issued to the state board of health and the selectmen of Watertown. The board of health appeared, and filed a motion to dismiss the petition, for want of jurisdiction. The court sustained the motion, and ordered judgment for the respondent; and the petitioner appealed to this court.

*G. A. Somerby & E. W. Washburne*, for the petitioner.

*W. 7. Loring*, Assistant Attorney General, (*C. R. Train*, Attorney General, with him,) for the respondent. 1. There are no words in the St. of 1871, *c.* 167, or in any other statute, which can be construed to give an appeal.

2. The St. of 1871, *c.* 167, § 2, is constitutional, although no right of appeal to a jury is given. The Legislature might have made provision for an effectual enforcement of the common law, by providing for the appointment of an officer whose duty should be to order the owner of a building to desist from using it for a noxious trade, until it could be ascertained by a jury, on an appeal from that order, whether the use in question created a nuisance or not. *Belcher* v. *Farrar*, 8 Allen, 325. Or the Legislature might have changed the common law in this regard, by prescribing a practical test for determining when a building used for a noxious trade was, and when it was not, a nuisance. Shaw, C. J., in *Commonwealth* v. *Alger*, 7 Cush. 53, 95, 96. Wells, J., in *Lowell* v. *Boston*, 111 Mass. 454, 464–467. The St. of 1871, *c.* 167, is an act of the second class; namely, a license law, to the effect that no building, in a city or town containing more than four thousand inhabitants, shall be used for a noxious trade; existing buildings so used are hereby licensed; other buildings may be licensed by the mayor and aldermen or by the selectmen; all licenses may be revoked by the state board of health. This construction of the statute is a reasonable one. The Gen. Sts. *c.* 26, §§ 52–60, provide for an effectual enforcement of the common law in this regard. The St. of 1871, *c.* 167, was designed to accomplish what was not accomplished by that act, and is therefore presumably a change of the common law. The provisions of the act are in substance, though not in form, those of a license law. Prohibiting the use of the building without the written consent of the selectmen, &c., is, in substance, prohibiting its use unless licensed by the selectmen, &c.

*Nightingale, petitioner*, 11 Pick. 168.    Declaring in a proviso that the terms of the section should not apply to existing buildings is in substance directly licensing those buildings; for a license is not the privilege of doing the act licensed, but is the privilege of being exempt from the operation of a law prohibiting the doing of that act.    *Calder* v. *Kurby*, 5 Gray, 597, 698. *Commonwealth* v. *Brennan*, 103 Mass. 70.    Gibson, C. J., in *Monongahela Navigation Co.* v. *Coons*, 6 W. & S. 101, 112.    *Metropolitan Board* v. *Barrie*, 34 N. Y. 657, 667.    From 1836 (if not from 1710) to 1855, and in some cities and towns to 1860, a precisely similar license law was in force.    The Rev. Sts. *c.* 21, § 47, authorized the selectmen to revoke any or all assignments, they might have made, of places for the exercise of noxious trades, and such revocations were not subject to be reviewed by a jury. The jury trial provided in § 48 gave the public a remedy by which an assignment could be revoked, in case the selectmen wrongfully omitted to revoke it.    The first time that an owner was given an appeal, by which an order revoking the assignment of his place could be reviewed by a jury, was by the St. of 1855, *c.* 391, § 3.    That act was originally in force in those cities and towns only which voted to adopt it, and was made obligatory throughout the Commonwealth by the Gen. Sts. *c.* 26.    It is clear, therefore, that the Rev. Sts. *c.* 21, § 47, was a license law: if it was not, it was unconstitutional.    The Prov. St. of 1710–11, (9 Anne) *c.* 8; 1 Prov. Laws, (State ed.) 656; and the St. of 1785, *c.* 1, must, it is submitted, be construed in the same way. The Rev. Sts. *c.* 21, profess to be nothing more than a reënactment of these statutes.    So construed, the St. of 1871, *c.* 167, is constitutional.    The Legislature can constitutionally make the action of its delegate, in revoking a license, final and not subject to be reviewed by a jury.    A license is an exemption from the operation of a law; consequently, revoking a license is a legislative act; if the Legislature can delegate the power to do that act, it can make the action of the delegate final.    The St. of 1875, *c.* 99, § 12, is an example of the action of the delegate being final, where a man is deprived of a beneficial use of his building and fixtures without a trial by jury.    So are laws requiring a license where no license was required before.    St. 1869, *c.* 415, § 12.    Gen. Sts. *c.* 86, § 12.    *People* v. *Hawley*, 3 Mich.

330. So are laws requiring yearly licenses. Sts. 1796, *c.* 88, § 5 1848, *c.* 270, § 2; 1839, *c.* 53 ; 1855, *c.* 121; 1845, *c.* 197, § 2 Rev. Sts. *c.* 47, § 1. St. 1832, *c.* 166. *Commonwealth* v. *Black-ington*, 24 Pick. 352. The fact that the state board of health can act only after notice and hearing does not show tnat their action is judicial. The hearing was required to enable them to exercise a healthy discretion ; but a legislative, not a judicial discretion. *Crease* v. *Babcock*, 23 Pick. 334, 344.

LORD, J. The only question which has been submitted for a determination in this case is, Has the petitioner, under the stat-utes of this Commonwealth, a right to a trial by jury upon the question whether the exercise of his business is dangerous to the public health ? It is contended by the petitioner that, if the St. of 1871, *c.* 167, applies to his building and trade, and deprives him of the right of appeal to a jury, it is unconstitutional. The respondent, on the other hand, contends that the statute is sim-ply a license law, and can be sustained as a license law, even to the extent of preventing the petitioner from carrying on his busi-ness, within the constitutional exercise of legislative authority, although he has no right of trial by jury.

The important question at the outset, therefore, is, Did the Legislature intend that the order of the state board of health, passed under § 2, requiring the petitioner " to cease and desist from carrying on the said business on the said premises, on and after the fifteenth day of May, 1876," should be absolute, final and irrevocable ? This statute is to be expounded in view of all existing laws upon the same subject matter, and is, if consistent with proper rules of construction and interpretation, to be so construed as to be in harmony with the provisions of the Consti-tution of the Commonwealth. If, however, by reasonable con-struction, the statute cannot be interpreted in such manner as to be consistent with the Constitution, the Constitution must pre-vail and the statute is void. It is necessary therefore to exam-ine the legislation upon this subject.

The earliest provincial act upon the subject of slaughter-houses is that of 1692–3, (4 W. & M.) *c.* 23, which is as follows " The selectmen of the towns of Boston, Salem and Charlestown respectively, or other market towns in the province, with two or more justices of the peace dwelling in the town, or two of the

next justices in the county, shall, at or before the last day of March, 1693, assign some certain places in each of said towns (where it may be least offensive) for the erecting or setting up of slaughter-houses for the killing of all meat, still-houses and houses for trying of tallow and currying of leather (which houses may be erected of timber, the law referring to building with brick or stone notwithstanding), and shall cause an entry to be made in the town-book of what places shall be by them so assigned, and make known the same by posting it up in some public places of the town; at which houses and places, respectively, and no other, all butchers and slaughtermen, distillers, chandlers and curriers shall exercise and practise their respective trades and mysteries; on pain, " &c.  1 Prov. Laws, (State ed.) 59.  In passing, we may refer, as bearing upon the question whether the legislation on this subject has been in the nature of license laws, to the Prov. St. of 1692–3, (4 W. & M.) *c.* 20, § 1, in reference to the sale of intoxicating liquors, in these words : " No person or persons whatsoever (other than such as, upon producing certificate from the selectmen of the town where they dwell, or who shall be otherwise thought fit by the justices themselves, shall be licensed by the said justices in quarter sessions) may presume to be a common victualler, innholder, taverner, or seller of wine, beer, cider, or strong liquors by retail ; nor shall any presume, without such license, to sell wine or strong liquors privately by a less quantity than a quarter cask, and that delivered and carried away all at one time, on pain of forfeiting," &c.  1 Prov. Laws, 56.  And similar license laws have been enacted at various times from that time to the present. There are other provisions to which it is not necessary to refer. The St. of 1692–3 made no provision for prohibiting the business of slaughtering, &c., in places, which had been once assigned for that purpose.

By the St. of 1710–11, (9 Anne) *c.* 8, provision is made upon that subject.  The preamble of the act is substantially a recital of the act before quoted, and the first section is a concise reënactment of the same provisions.  The second section is as follows : " When and so often, from time to time, as it shall appear any house or place assigned or to be assigned to and for the exercising of either of the aforesaid trades or mysteries, to

become a nuisance by reason of offensive and ill stenches proceeding from the same, or otherwise hurtful to the neighborhood, it shall and may be lawful, to and for the court of general sessions of the peace within the county, to cause inquiry to be made thereinto by a jury, and to suppress such nuisance by prohibiting and restraining the further use thereof for the exercise of either of the aforesaid trades or mysteries, under a fine," &c. 1 Prov. Laws, 656. From that time till 1871, various changes and reënactments of the law took place, and in every instance, so far as we know, provision was incorporated into the law by which the question whether a place which had been once lawfully established for the exercising such trades should be discontinued by public authority was ultimately to be determined by a jury. The learned counsel for the respondent, in their extremely able and thorough argument, have failed to call our attention to any legislative act vesting the ultimate power of decision in any other tribunal.

Article 15 of the Declaration of Rights is as follows : " In all controversies concerning property, and in all suits between two or more persons, except in cases in which it has heretofore been otherways used and practised, the parties have a right to a trial by jury; and this method of procedure shall be held sacred, unless in causes arising on the high seas, and such as relate to mariners' wages, the Legislature shall hereafter find it necessary to alter it."

These citations are made not for the purpose of showing that the legislative act in question is in violation of the Constitution and therefore void, but, as before intimated, for the purpose of grouping the legislation as it existed at the time of passing the act in order to aid us in the interpretation of it. And, in the same view, it becomes necessary to look into existing laws.

By the Gen. Sts. c. 26, the whole power of regulation of noxious and offensive trades is committed to the respective boards of health of the several towns. They may assign places for the exercise of such trades and may revoke such assignments. § 52. The rights of the public and of the individual exercising the trade are carefully secured. If the town board of health refuses to revoke an assignment, after the place shall have become a nuisance, and perhaps without any effort to procure a

revocation, any person aggrieved may apply to the Superior Court for a revocation of the assignment, and the court may, after a trial, revoke the same. § 53. If the board revokes the assignment, any person aggrieved by the revocation may have an appeal to a jury, who may annul the revocation. §§ 55, 56. The rights of the public are fully secured. Whenever by public authority the assignment is revoked, that revocation is effectual and in force, until the decision is annulled by verdict of a jury. § 57. These provisions of law were all in full force when the St. of 1871 was passed.

It now becomes important to examine the statutes in relation to the state board of health. That board was established by the St. of 1869, *c.* 420. The board was to " take cognizance of the interests of life and health among the citizens of this Commonwealth." They were to " make sanitary investigations and inquiries in respect to the people, the causes of disease, and especially of epidemics and the sources of mortality, and the effects of localities, employments, conditions and circumstances, on the public health ; " and " gather such information in respect to those matters as they may deem proper, for diffusion among the people." It was also their duty to " advise the government in regard to the location of any public institutions." They are required also to report to the Legislature " their doings, investigations and discoveries during the year ending December thirty-first, with such suggestions as to legislative action as they may deem necessary." It is made their duty also " to examine into and report, what in their best judgment is the effect of the use of intoxicating liquor, as a beverage, upon the industry, prosperity, happiness, health and lives of the citizens of the state. Also, what additional legislation, if any, is necessary in the premises." This is the whole duty of the board under the act establishing it. No other power or duty was conferred or imposed upon such board until the St. of 1871, *c.* 167, which is the act under consideration. The first section of that act provides, " Whoever, in any city or town containing more than four thousand inhabitants, erects, occupies or uses any building for carrying on therein the business of slaughtering cattle, sheep or other animals, or for melting or rendering establishments, or for other noxious or offensive trades and occupations, or permits or

allows said trades or occupations to be carried on upon premises owned or occupied by him or them, without first obtaining the written consent and permission of the mayor and aldermen, or selectmen of such city or town, shall forfeit a sum not exceeding two hundred dollars for every month he or they so occupy or use such building or premises, and in like proportion for a longer or shorter time: provided, that the terms of this section shall not apply to any building or premises now occupied or used for the trades or occupations before described." It is agreed that the petitioner's premises are within the proviso, and might be used without such permission. It will be observed also that the use is not authorized by that act; but simply that the terms of the act shall not apply to buildings then actually in use. If therefore the language of the section could be construed as a license, it is not easy to see how it can be a license of that which is in terms excluded from its operation. The precise question to be determined in this case arises under the second section of the act of 1871, which is as follows:

" Whenever, in any city or town containing more than four thousand inhabitants, any building or premises are occupied or used by any person or persons or corporation for carrying on the business of slaughtering cattle, sheep or other animals, or for melting or rendering establishments, or for other noxious or offensive trades, the state board of health may, if in their judgment the public health or the public comfort and convenience shall require, order any person or persons or corporation carrying on said trades or occupations, to desist and cease from further carrying on said trades or occupations in such building or premises; and any person or persons or corporation, continuing to occupy or use such building or premises for carrying on said trades or occupations after being ordered to desist and cease therefrom by said board, shall forfeit a sum not exceeding two hundred dollars for every month he or they continue to occupy and use such building or premises for carrying on said trades or occupations after being ordered to desist and cease therefrom by said board as aforesaid, and in like proportion for a longer or shorter time: provided, that on any application to said board to exercise the powers in this section conferred upon them, a time and place for hearing the parties shall be assigned by said board

and due notice thereof given to the party against whom the application is made, and the order hereinbefore provided shall only be issued after such notice and hearing."

This section authorizes the state board of health to forbid the exercise of the offensive trade in any municipality of more than four thousand inhabitants. This is its whole power, under that or any other provision of law in respect to the regulation of noxious trades. By the first section of the act, the Legislature have declared their purpose that the general subject of noxious and offensive trades shall be within the control of the boards of health of the municipal corporations. Precisely the same power is given by the Gen. Sts. *c.* 26, § 52, to the boards of health of towns as by this section is given to the state board of health. The only difference is this, that by the St. of 1871, the state board of health is bound to give notice to a party and allow him a hearing before it can pass an order of prohibition; but under the Gen. Sts. *c.* 26, § 52, the selectmen may pass an order of prohibition without any previous notice. *Belcher* v. *Farrar*, 8 Allen, 325.

We cannot suppose that the Legislature intended to change the whole system of regulation of noxious trades by simply conferring the power to prohibit in certain cases upon the state board of health.

If the construction contended for by the respondent is correct, there is nowhere any power of revision of the action of the board. It is absolute, final, conclusive. In cities and towns containing four thousand inhabitants, the whole system, so elaborately prepared and enacted by the Gen. Sts. *c.* 26, by which the rights of the public and the rights of citizens are secured through the intervention of trials by jury in the county and before the Superior Court, is absorbed in the jurisdiction of a state board of health; and this, too, without a suggestion of the repeal of the many provisions of the existing laws which are in conflict with this construction, and with the strong intimation conveyed by the first section, that the general system is to be preserved. It is not necessary to look at the consequences of such an interpretation to induce us to reject it; still those consequences are proper subjects for consideration. and are presumed to have been foreseen by the Legislature. It is undoubtedly true that the

mayor and aldermen or selectmen may authorize in writing the carrying on of noxious and offensive trades at a certain place in a city or town of more than four thousand inhabitants ; and the day after the occupancy commences, the state board of health may give a notice and hearing to the parties thus authorized, and may issue an order forbidding the use of that place. Did the Legislature intend that the town board of health might then again authorize the same business in the same place, to be again prohibited by the state board of health ? We can no more suppose that the Legislature intended to introduce this conflict and confusion into the law, than that it intended by implication to subvert the whole system of regulation, by absorption into a general authority of prohibition all over the Commonwealth by a board composed of only seven members, serving without compensation, and necessarily strangers to the great majority of the various municipalities and unacquainted with their local interests.

The only construction which we can give to the statute, consistent with the Constitution of the Commonwealth, with existing laws recognized by the act itself as still in force, with the general policy of the legislation upon the subject, is to treat the power given by the statute as given subject to the same limitations and qualifications as that given to town boards of health upon the same subject, and, of course, with the same right of appeal. This construction of the statute preserves the general system provided by law unimpaired ; it simply gives to the state board of health jurisdiction, whether concurrent with the town boards or exclusive it is not material to this case to inquire, in cities and large towns, to do what may be done in every town of the Commonwealth by the local board of health ; but we do not think that it was the purpose of the Legislature, nor does the language of the act compel us to say, that its effect is to deprive the party of that right of trial by jury, to which the citizens in such cases have been accustomed for nearly two centuries. By the Gen. Sts. *c.* 26, § 52, " the board " (the town board of health) " may also forbid the exercise of such trade or employment within the limits of the town or in any particular locality thereof." By § 55, the " orders of prohibition under § 52 shall' be served upon the occupant or person having charge of the

premises where such trade or employment is exercised." By § 56, "any person aggrieved by such order may appeal therefrom," &c. Although the whole proceeding is statutory, and not according to the rules of the common law, we think it was the purpose and intention of the Legislature that the decision of the new tribunal should be subject to the same rights of appeal as that of the local board. Many questions present themselves which have not been discussed, which the parties, if they desire, may raise upon the trial, and to which it is not necessary to refer. The result of our whole consideration is, that the Superior Court erred in dismissing the petition, and that it must

*Stand for further hearing.*

The case was then tried in the Superior Court, and the jury returned the following verdict and special findings, each signed by their foreman and affirmed in court:

" Verdict. The jury affirm the order of the state board of health, in full, dated April 3, 1876. The jury answer, No."

" Special findings. The jury alter the order of the state board of health, dated April 3, 1876, as follows : that Mr. George A. Sawyer shall be permitted to continue the business of slaughtering animals on the premises now occupied by him in the town of Watertown, under the restrictions as per appended sheet.

" 1. Mr. George A. Sawyer shall be required to concrete the cellar under his slaughter-house, in concave form.

" 2. Mr. Sawyer shall not keep swine in or under his slaughter-house.

" 3. All offal and offensive matter shall be removed from the above premises before ten o'clock, P. M., of the day of killing, in covered, water-tight boxes or tanks.

" 4. Said premises shall be kept at all times in a condition of neatness and cleanliness acceptable to the local board of health."

The respondent moved to set aside the verdict, for the following reasons :

" 1. That the verdict does not determine, pass upon, or in any wise relate to certain matters embraced in and prohibited by the order of the defendants appealed from, to wit, the business of rendering.

"2. That the verdict neither affirms, annuls or alters said order in substantial particulars, to wit, as to the business of ren dering.

"3. That the verdict is indefinite and uncertain, and does not prescribe in what condition the premises shall be kept so that such condition can be determined from the verdict.

"4. That the verdict delegates to another tribunal authority in the premises and power to enlarge or limit the finding of the jury and the order appealed from.

"5. That the fourth restriction contained in the verdict is void, and vitiates the verdict.

"6. That the verdict is partial, incomplete, and does not cover the subject matter of the order appealed from."

The motion was overruled; and the respondent appealed to this court.

*C. R. Train,* Attorney General, *& J. B. Goodrich,* for the respondent.

*G. A. Somerby,* (*E. W. Washburne* with him,) for the petitioner.

LORD, J. When this petition was before us at a former term, it was decided that the petitioner had the same right of appeal from an order of the state board of health as from that of the local board.

The statutes of the Commonwealth do not in terms authorize either the local or state board of health to prescribe regulations for the mode of carrying on noxious or harmful trades or business. Their power is that of prohibition. Gen. Sts. *c.* 26, § 52. Although no authority is given to regulate "offensive trades," yet by § 5 of the same chapter it is provided that "the board shall make such regulations as it judges necessary for the public health and safety, respecting nuisances, sources of filth, and causes of sickness, within its town," &c. By § 56, any person aggrieved by the order of prohibition may appeal therefrom; and provision is made for a speedy hearing before a jury. Section 58 provides that "the verdict of the jury, which may either alter the order, or affirm or annul it in full, shall be returned to the court for acceptance as in the case of highways; and said verdict, when accepted, shall have the authority and effect of an original order from which no appeal had been taken."

In view of these provisions of the statute, we do not deem it necessary to determine the question whether the power of prohibition includes that of regulation, for we think, taking all the legislation upon the subject in view, that the statute confers upon the boards of health the power to regulate the mode in which " offensive trades " shall be carried on.

The order of the state board of health appealed from is " that George A. Sawyer of Watertown be and he hereby is directed to discontinue the business of slaughtering and rendering on the premises now occupied by him, on and after the fifteenth day of May, 1876."

It is to be observed that the business of " slaughtering " and the business of " rendering " are not the same business. They are carried on sometimes conjunctively, and sometimes separately. They are not equally offensive ; and, when carried on in the same establishment, they are undoubtedly more offensive than when either is carried on without the other ; and whether the prohibition of the state board of health is confined to the carrying on of both kinds of business in connection, or whether it is an order prohibiting each, is unimportant. No criticism of the order is made in this respect. The petitioner accepts it as a prohibition of each business, and that is as favorable a view as can be taken for the validity of the order. Nor does the petitioner claim to carry on the business of rendering, nor does he seek for any modification of the order in this respect. His appeal relates only to the order forbidding his carrying on the business of slaughtering. That subject only was presented to the consideration of the jury. Under the statute above cited, the jury have authority to affirm the order in full. Although with slight informality, yet with no possibility of error, the jury find that they do not affirm the order in full. The same section of the statute provides that the jury may alter the order. And, upon this branch of the case, the jury make " special findings," commencing their special findings thus : " The jury alter the order of the state board of health, dated April 3, 1876, as follows : that Mr. George A. Sawyer shall be permitted to continue the business of slaughtering animals on the premises now occupied by him in the town of Watertown, under the restrictions as per appended sheet." The restrictions, four in number, as well as

the general finding that the order is not affirmed, are signed by the foreman of the jury, and both appear to have been affirmed in court.

It would undoubtedly have been within the power of the court, before the verdict was affirmed, to have had all the findings of the jury incorporated into a single one in the form of an order framed substantially as if ordered by the state board of health; and that, perhaps, would have been the preferable mode of affirming the verdict. We do not, however, think the mode adopted so defective in form as to require us therefore to set it aside. The record shows that the petitioner set forth in his petition the order of the state board of health, in the terms in which it was made, and prayed that a jury might either alter or annul in full such order of prohibition. The several findings of the jury appear also upon the record, and, upon the principle that that is certain which can be made certain, we think the several findings of the jury may be so applied to and incorporated with the original order, that the whole is sufficiently clear, precise and definite, in matter of form.

There remains, then, only the question whether in substance the findings of the jury are warranted ; and it seems to us the proper test of this is, Is the order, as modified by the jury, one which the state board of health is authorized to make ? And we think it is. As already suggested, we think either the local or the state board of health, under the general authority given them to "make such regulations as it judges necessary for the public health and safety, respecting nuisances, sources of filth," &c., may properly make regulations as to the mode of conducting offensive trades. It may be that such regulations must be enforced, if not obeyed, by absolute prohibition ; and it may be that the order making them would of itself be an order of prohibition to the conducting of them in any other mode.

The law prescribes no standard by which the propriety of such regulations must be judged. It rests only in the sound judgment and discretion of public officers appointed because of their qualifications for such duty, but subject to the revision of a jury ;. and the restrictions and limitations imposed by a jury must be of an extraordinary character for the court to interfere and say that, in law, they are not authorized. On examining

these limitations, we cannot see that they are subject to objection.

The first is, " that the petitioner shall be required to concrete the cellar under the slaughter-house in concave form." There can be no doubt or misunderstanding of the meaning of this language. And the court cannot say that it is not a proper and a reasonable requirement. The second is, " Mr. Sawyer shall not keep swine in or under his slaughter-house." Certainly, no objection can be made to this. The third is, " All offal and offensive matter shall be removed from the above premises before ten o'clock, P. M., of the day of killing, in covered water-tight boxes or tanks." Nor is there in this anything objectionable. Of course, the true construction of " removal " is effectual removal from the premises.

The fourth and only remaining restriction is, that " said premises shall be kept at all times in a condition of neatness and cleanliness acceptable to the local board of health." We do not understand this finding as an imposition of any duty upon the local board of health. There is probably nothing in it which would not be implied by law if it were omitted. It is a simple declaration that there shall not be allowed any accumulation of filth from any source or by any means, by which the premises should become a nuisance; and the reference to the local board of health is probably as to the legal standard of neatness ; but, whatever may be its construction, we do not see that it in any manner vitiates the finding of the jury ; for if, when the petitioner has complied with all the regulations of the order, as altered by the jury, he, by some extraneous means, accumulates filth upon his premises, in such manner as to injuriously affect the public health, and in some other mode creates a nuisance, the law would subject him to the control of the local board of health, as well as to that of the state board.

There is a peculiarity in this proceeding which quite distinguishes it from the ordinary rules which govern appeals. The appeal to a jury does not vacate the order. It remains in full force till annulled or altered. If not annulled or altered, it still stands ; if altered, it stands as altered. If the alterations made are absolutely impracticable, the order still stands just as if the original order had been made in the terms of the order as altered

by the jury; and if the original order had contained the same regulations, we certainly could not say, as matter of law, that the order was void. At any rate, we could not say that it was void so far as the restrictions which it was competent for the board of health to make were concerned, whatever may be said as to any restriction which it was not within their power to make; and whatever the board of health may do, the jury may do, and with the same effect.                    *Judgment affirmed.*