WATUPPA RESERVOIR COMPANY *vs.* COLIN MACKENZIE.

Bristol.   Oct. 28, 1880; Oct. 20, 1881. — Jan. 4, 1882.

An order of the board of health of a city, under the Gen. Sts. *c.* 26, § 8, directing the owner of land to remove a nuisance in a specific manner, is void.

An order of the board of health of a city, under the St. of 1868, *c.* 160, directing the owner of land to remove a nuisance, is void, if passed without a previous notice and hearing.

The owner of swamp land conveyed to a reservoir company (authorized by its charter to store water, and to drain off the same in such manner as it should deem best, and for this purpose to acquire land by purchase or otherwise) the right of flowing or raising the waters of a pond over his land, by a deed containing full covenants of seisin and warranty. *Held*, that the deed conveyed an easement in the land, and was not a release of damages for flowing the land; and that the reservoir company might maintain a bill in equity against the owner of the land to restrain him from filling the same.

BILL IN EQUITY, filed December 29, 1879, to restrain the defendant from filling in land, which the plaintiff claimed the right to flow. The answer averred that the defendant was bound to fill the land under two orders of the board of health of

the city of Fall River. The first order was as follows: "January 5, 1880. To Colin Mackenzie, Esq. You are hereby notified that the board of health require you to fill with cinders, gravel, or some suitable material, your premises bordering on the Fall River stream in such manner as to render the same free from filth and substances producing offensive odors, injurious to the health of the public, the same to be completed within three months from the date hereof. By order of the board of health, George A. Ballard, Clerk." The second order, addressed to the defendant, was dated January 23, 1880, and read as follows: "You are hereby notified to cause the flats or low lands belonging to you on the Fall River stream, or Quequechan River, to be filled with gravel, earth, or some proper material, to the satisfaction of this board, and that work upon the same be commenced forthwith, and the entire work to be completed on or before the fifteenth .day of January, 1881;" and was signed in the same manner as the preceding notice. The answer also averred that the defendant was the owner in fee of the land in question, and had a right to fill it.

Hearing before *Morton*, J., who reserved the case for the determination of the full court. The facts appear in the opinion.

The case was argued at the bar in October 1880, by *J. M. Morton*, for the plaintiff; and by *H. K. Braley & M. G. B. Swift*, for the defendant; and was afterwards submitted on briefs to all the judges.

LORD, J. The plaintiff is a corporation organized under a special charter granted in 1826, by *c.* 31 of the acts of that year, for the purpose of establishing a reservoir of water in the Watuppa ponds for the benefit of the manufacturing establishments on the Fall River; and it had a special authority to make reserves of water by erecting a dam across the outlet of the Watuppa ponds two feet higher than the dam already erected by the Troy Cotton and Woollen Manufactory, and to draw off said reserved water in such quantities, at such times, and in such manner as it should deem best for all concerned; and was authorized to acquire, by purchase or otherwise, and to hold and possess, such real estate, not exceeding ten thousand dollars in value, as might be necessary for the purposes of the act.

It is to be observed that the objects and purposes of this company were quite unlike those ordinarily intended to be accomplished by mill-owners. The dam was not to be built for the purpose of raising a head of water by means of which to drive a mill, but for the mere purpose of creating reservoirs or ponds in which water was to be stored, and from which it was to be drawn at the will and for the profit of the company. It has thus been in operation, and the works have thus been carried on, for more than half a century. From the report of the case, it appears that, while the plaintiff has exercised these rights of flowage uninterruptedly from its organization to the present time, and obtained reservoir and flowage rights, both by force of its charter and by grant from the abutters on the stream and pond, the number of such abutters or the extent of territory used for such purposes does not appear.

It is apparent, however, that the extent of territory flowed and the number of original proprietors of the land thus flowed are quite large; for the water obtained by means of this dam and flowage is used for the benefit of seven or eight different corporations or establishments below the dam; and some ten or twelve abutting on the stream above the dam are benefited by the dam and flowage. A part of the land lies between the Troy dam and Eight-Rod Way bridge, and consists of flats on both sides of the stream, and was formerly a swamp. These flats are sometimes covered with water which is held back by the dam, and sometimes not; and, when covered, the water is not held back by the dam higher than the company has a right to hold it. The distance from the dam to the bridge is from a third to half a mile.

This reference to the facts reported shows that the plaintiff was in the possession of, and exercising control over, a large area of territory, which it was devoting to purposes which were authorized by law, and in the mode prescribed by law. Over this large tract of land, the board of health of the city of Fall River apparently has assumed some kind of jurisdiction; for it appears by the report that it has issued certain orders in relation thereto. But those orders are simply void, and therefore incompetent evidence. They are not justified by the Gen. Sts. *c.* 26, §§ 8, *& seq.*, because, instead of ordering in general terms,

as required by those statutes, " the owner or occupant at his own expense to remove" the nuisance, they undertake to prescribe the manner in which it shall be removed; namely, by filling with gravel, earth, or some proper material, to the satisfaction of the board, not allowing him to adopt the alternative of excavating or dredging the flats, or of keeping them covered with water to a sufficient depth. The orders are not justified by the St. of 1868, *c.* 160, because they appear to have been made without previous notice and hearing, as required by that statute. The orders of the board of health not being justified by either of these statutes, it is unnecessary to consider how far either or which of the statutes is applicable to the facts disclosed by the report.

The only other question which remains is whether the defendant of his own motion, and in the exercise of his own right, may without the license of the plaintiff fill its reservoir in the manner in which he is proceeding to fill it. He claims such right. His position is, that the deeds to the plaintiff of Orswell and Borden, former owners of respective portions of the land covered, gave no interest in the land described therein, but were only releases of the damages which the parties had the right to claim by reason of their lands being flowed. This claim is founded upon the assumption that the charter of the plaintiff corporation conferred only the authority which mill-owners have to build dams across non-navigable streams. But the right given in this case is not the right to raise a head of water by a dam, but it is to store waters for use within ponds or reservoirs authorized to be constructed for that purpose; and it is simply absurd to say that the plaintiff could acquire by its charter or by purchase a reservoir to hold water which the owner of the land on which it was placed had the right to fill up.

The mill act has but little bearing upon the construction of contracts. If the contract is made with a corporation, it is a proper inquiry whether the natural construction of language would show the contract to be *ultra vires*. But if the contract is one within the scope of the authority of the corporation, the construction is governed by the same general rules which govern all contracts. The parties who made the respective deeds were seised in fee simple of the land described. The first quality of

an estate in fee simple is the right to dispose of it, and this right includes not only the whole, but each part of it; not only an estate in fee, but any lower estate, whether freehold or leasehold or any other less estate known to the law; and such estate may include temporary as well as permanent easements.

Keeping in mind the object for which the plaintiff corporation was chartered, the purpose which it was designed to accomplish, the means which it was authorized to use to accomplish such purpose, and its authority to acquire by purchase such real estate as might be necessary to effect the purposes of the charter, we are prepared to look into the deeds under which it claims its right; and, for the purposes for which they were executed and the mode in which they were executed, we can imagine no language better calculated or more effectual to pass an interest in real estate. They are deeds poll acknowledged and recorded. They contain words of grant, with full covenants of seisin, warranty of title to the premises granted, right to sell and convey, and to warrant and defend the granted premises to the grantee, its successors and assigns forever. The words by which the premises are granted are, "do hereby give, grant, sell and convey unto the said Watuppa Reservoir Company the right of flowing, overflowing or raising the waters of the Watuppa ponds upon my lands situated in said Tiverton," and then the deed proceeds to define the boundaries of the land thus incumbered by reference to another deed. If this deed does not convey a right in the land, then it is not in the power of the absolute owner of an estate in fee simple in any mode to grant an easement in land, or to subject his land to a perpetual servitude.

In this case the precise purpose and object of the plaintiff's charter were to store water upon specific territory for the general benefit of the public, by the erection and maintenance of a large number of mills of various characters and for various purposes; and it was to assist in the accomplishment of this enterprise that the original deeds were given; and, as between the plaintiff and the defendant, who succeeds only to the original grantor's right, the latter has no right to interfere or meddle with the territory so as to diminish its capacity for storage.

The result is, that an injunction is to issue restraining the defendant from any further filling; and the cause is to stand for

such further hearing as may be necessary in reference to the filling already made, and to determine what shall be the final decree.                                    *Decree for the plaintiff.*