INHABITANTS OF BELMONT *vs.* NEW ENGLAND BRICK COMPANY.

Middlesex.    December 5, 6, 1905. — February 28, 1906.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Nuisance.    Board of Health.*

Under R. L. c. 75, §§ 65, 67, an order from the board of health of a city or town to the owner or occupier of private premises to remove a source of filth or cause of sickness cannot direct that the nuisance shall be abated in a specific way, and the owner may abate the nuisance in any proper manner.

Under R. L. c. 75, §§ 91–98, if a trade or employment is designated by a general order of the board of health of a city or town as offensive, before such an order can be enforced it must be served upon the occupant or person having charge of the premises where such trade or employment is exercised, and a notice by publication in a newspaper which also is sent by mail to the persons against whom the proceedings are taken is insufficient.

An order of the board of health of a town prohibiting the exercise of the trade or employment of excavating clay for the purpose of manufacturing bricks within the limits of the town, except upon the premises "now owned and operated" by a certain brick company, without a written permit from the board of health, not to be granted unless the applicant shall furnish a bond with good and sufficient sureties conditioned upon the observance of the terms of the permit and upon the filling within a reasonable time to be fixed by the board with materials and in a manner satisfactory to the board of any excavations made by the obligor, is unreasonable and void, and cannot be enforced against the brick company the continued operation of whose business on its old premises is excepted.

BILL IN EQUITY, filed in the Superior Court on May 29, 1903, by the inhabitants of the town of Belmont against the New

England Brick Company, alleging that the board of health on February 7 passed the following order of prohibition:

" Reg. 19. The exercise of the trade or employment of excavating clay for the purpose of manufacturing bricks, (except upon the premises now owned and operated by the New England Brick Co.,) is hereby prohibited within the limits of the town of Belmont, except in accordance with a written permit to be first granted by the Board of Health of said town.

" Any person, firm or corporation desiring to exercise said trade or employment within the limits of said town, must make written application for a permit, to said Board of Health, subject to its approval, and must describe in said application the premises upon which the applicant desires to exercise said trade or employment, and must state the time when and within which the applicant desires to exercise said trade or employment, and also the depth and area of the excavation or excavations said applicant desires to make.

" Said board will not grant such permit unless said applicant shall first furnish a bond with good and sufficient sureties (the amount of said bond, and said sureties, to be satisfactory to said Board), running to the town of Belmont, and conditioned upon the observance by said applicant of the terms of said permit, and also upon the filling in, within reasonable time, to be fixed by said board, and with proper materials and in a manner satisfactory to said board, any excavation or excavations to be made by said applicant."

The bill further alleged that on February 7, 1902, the order was entered in the records of the town and was published in the same month in the Belmont Bulletin, a newspaper published at Belmont, The Watertown Enterprise, a newspaper published at Watertown, and in the Cambridge Chronicle, a newspaper published in Cambridge, and that in addition to this publication the board of health on February 24, 1902, caused a copy of the order " to be deposited in the mails, postage prepaid, and duly directed to the defendant."

The bill further alleged that on February 7, 1902, the defendant was carrying on the trade or employment of excavating clay for the purpose of manufacturing brick within the limits of the town upon a certain parcel of land, which was the land excepted from the operation of the foregoing order.

The seventh paragraph alleged that on or about October 8, 1902, the defendant purchased and acquired another parcel of land, described.

The eighth and ninth paragraphs were as follows:

" 8. The defendant, so being the owner of the parcel of land described in the seventh paragraph of this bill as aforesaid, is engaged upon said parcel in exercising the trade and employment of excavating clay for the purpose of manufacturing bricks, not having made written application to said Board of Health for a permit so to do and not having been by said Board of Health first granted a written permit so to do as required by the order hereinbefore set forth.

" 9. Such use of said premises by the defendant is a nuisance, is hurtful to the inhabitants there dwelling, passing, repassing and being, injurious to their estates, dangerous to the public health and is attended by noisome and injurious odors."

The bill prayed that the defendant and its servants and agents might be restrained from exercising upon the premises described the seventh paragraph of the bill the employment described in the order of the board of health.

The allegations of the bill which are above described and set forth were admitted by the defendant except those contained in the ninth paragraph.

In the Superior Court the case was heard by *Pierce*, J. At the close of the plaintiff's evidence the judge ordered that the bill be dismissed, and, at the request of the plaintiff, reserved the case for determination by this court, upon the questions (1) whether the order of the board of health set forth in the bill was within the powers of the board of health, and (2) whether it was a reasonable regulation. If both of these questions were answered in the affirmative the case was to stand for hearing in the Superior Court; if either question was answered in the negative the decree dismissing the bill was to stand. The character of the evidence is indicated sufficiently in the opinion.

*T. W. Proctor*, for the plaintiff.

*W. Keyes*, for the defendant.

BRALEY, J. By the decree dismissing the bill the questions that might have arisen under the defendant's demurrer and motion to frame issues to be tried by a jury are rendered imma-

terial, and the only question presented for our decision is the validity of the order passed by the board of health, which under the terms of the reservation must be construed to mean whether upon the evidence introduced by the plaintiff, and which is fully reported, the bill can be maintained.

In the exercise of the plenary statutory authority with which it is clothed a board of health of a town may make such general regulations for the protection of the public health as are reasonable and expedient, and may declare that certain employments by the offensive or filthy manner in which they are conducted are injurious to the community, and should be entirely prohibited, or regulated in such manner as they may prescribe, or that they constitute a nuisance which should be abated. R. L. c. 75, §§ 65, 91. *Belcher* v. *Farrar,* 8 Allen, 325. *Taunton* v. *Taylor,* 116 Mass. 254. *Sawyer* v. *State Board of Health,* 125 Mass. 182, 191. *Train* v. *Boston Disinfecting Co.* 144 Mass. 523, 526. After being duly promulgated and served such regulations, or orders, until revoked, modified, or declared void, have the force of law. *Salem* v. *Eastern Railroad,* 98 Mass. 431, 443.

But the power to prohibit or regulate offensive trades is to be exercised in a manner distinct from the enforcing of general regulations passed under § 65 for the suppression of " sources of filth and causes of sickness . . . which may . . . be injurious to the public health." R. L. c. 75, §§ 91–98. *Commonwealth* v. *Young,* 135 Mass. 526. *Quincy* v. *Kennard,* 151 Mass. 563. *Cambridge* v. *Trelegan,* 181 Mass. 565. *Commonwealth* v. *Rawson,* 183 Mass. 491. *Taunton* v. *Taylor,* 116 Mass. 254. *Sawyer* v. *State Board of Health,* 125 Mass. 182.

It must be assumed that the order under which it is sought to maintain the bill was passed in accordance with the provisions of § 91, for the authority conferred by § 65 does not justify an order, that a nuisance shall be abated in a specific way. If a nuisance exists which the landowner when so ordered under § 67 must abate, he may do so in any proper manner. *Watuppa Reservoir Co.* v. *Mackenzie,* 132 Mass. 71. *Commonwealth* v. *Alden,* 143 Mass. 113, 117.

In proceedings under § 91 if a trade, business or employment designated by a general order or regulation as offensive is to be suppressed when not conducted in the manner therein specified,

before such an order can be enforced in a specific case, under § 94, it must be served upon the occupant, or person in charge of the premises where the prohibited business is carried on, or the trade or employment is exercised. This requirement is for the purpose of enabling those who own or are interested in the property that may be thus affected or those deprived of a trade or employment to appeal from the order and to test its validity by a trial before a jury in the Superior Court as provided by § 95. A notice given by publication in a newspaper, or through the mail directly addressed to those against whom proceedings are to be taken, which was the course followed in the present case, is insufficient because not in conformity with this section. See *Commonwealth* v. *Alden, ubi supra.* Unless this jurisdictional requirement is observed so that the right to a jury trial may be had, at the option of the person aggrieved, in which the proceedings may be reviewed and either annulled or modified, the enforcement of the order as to him becomes a nullity. *Commonwealth* v. *Young, ubi supra.* See *Commonwealth* v. *Taylor, ubi supra,* and *Commonwealth* v. *Rawson,* 183 Mass. 491, 494. But independently of this failure properly to notify the defendant, which is sufficient to sustain the decree dismissing the bill, the regulation cannot be sustained.

Even if before taking action, in the first instance, the board had granted an opportunity to be heard to those whose rights of property might thereby be seriously impaired, yet in the attempt to enforce the order by this suit the jurisdiction of the board is not to be assumed conclusively, and may be reviewed to determine whether the general sanitary conditions shown justified the action taken as reasonable, or whether " the exercise of the trade, or employment of excavating clay for the purpose of manufacturing bricks " actually was the cause of the spread of malaria. *Miller* v. *Horton,* 152 Mass. 540, 545.

To make bricks requires clay, and the occupation of manufacturing them in which the defendant was engaged is not within the class of employments presumably offensive, or for which under R. L. c. 75, § 99, a license must be obtained before they can be prosecuted lawfully. Neither is this business generally recognized as directly harmful to the health or property of the community. But the prohibition that clay could not be dug for

this purpose except out of land owned by the defendant when the order was passed might be indirectly sufficient to prevent the further transaction of its business for want of material, and if the acquisition of the additional land described in the bill from which clay could be dug became necessary the prohibition might come very near to being a confiscation of property rights without compensation. *Commonwealth* v. *Boston Advertising Co.* 188 Mass. 348.

Prohibiting by a town ordinance the blasting of rocks with gunpowder, when this is required for the public safety, undoubtedly is within the powers given to towns by R. L. c. 25, § 23, when construed in connection with R. L. c. 102, §§ 93, 96 and 99, and similar action may be taken by a town board of health under R. L. c. 75, § 91. *Commonwealth* v. *Parks*, 155 Mass. 531. But the difference between quarrying stone by the frequent use of an explosive that generally is regarded as so dangerous that its keeping and sale is carefully regulated by statute, and where such use may be and frequently is attended with serious consequences to persons or property, and that of working the soil in the ordinary way for clay is obvious. The first process whatever precautions are taken may be considered as intrinsically dangerous to the public, while the other is harmless.

Upon resorting, however, to the evidence in connection with the eighth and ninth paragraphs of the bill, as there is no proof of "noisome and injurious odors," it becomes clear that neither the digging of clay nor the process of its manufacture into bricks of itself was noxious, but if the pit from which it was dug remained unfilled water accumulated, which upon becoming stagnant provided a breeding place for mosquitos by which the disease of malaria, prevalent in the town, might be transmitted from a person suffering with this disease to those who before had been unaffected.

The owner of land in which it is found may make the digging and selling of clay an employment or source of revenue, and it is common knowledge that this product is used for other purposes than that to which it is put by the defendant, and the menace to the public health would be no greater from an unfilled pit for whatever purpose the contents had been removed.

The object of the board was to prevent the breeding of mos-

quitos, which conveyed disease, by prohibiting the establishment of breeding grounds where they might be generated. But it also follows that any pool of water thus artificially formed, when of sufficient age, would be equally objectionable, and the real condition to be remedied is the creation and maintenance of this source of sickness. Until the water stagnated, and mosquitos were bred, the action of the landowner had not become injurious to the community, and for the benefit of the public to destroy, or impair his right to convert his property into money, where the process of conversion in itself is innocent, is unnecessary and oppressive.

A regulation declaring that water when so accumulated, if permitted to stagnate, was the means by which the public health might be injuriously affected, and hence constituted a nuisance, the creation of which was forbidden, would have provided ample sanitary protection, and would have been free from the objection found in the present order, which in its scope sought to provide a remedy that when put in operation practically caused an impairment of private rights so disproportionate with the gain to the public health as to make it unreasonable, and therefore invalid. *Bent* v. *Emery*, 173 Mass. 495, 496. It contains another important feature which lends additional strength to this failure of reasonable adjustment between the result sought to be accomplished, and the method employed to obtain it. A provision is found that if a bond with sufficient sureties is given conditioned to dig and refill at such times and in such manner as the board may direct, then the clay may be dug, but this unusual and anomalous requirement imposes a restrictive burden that might become so oppressive as to entirely prevent the pursuit of a lawful and harmless employment, and in some cases probably would be tantamount to an indirect destruction of a valuable right in real property, as a landowner who was unable to furnish such a bond might be deprived of a substantial source of income. There is, moreover, no statute authorizing the imposition of such a precedent condition, or that makes such an instrument when taken a valid obligation which may be enforced by the town.

Indeed, the remedies provided for the preservation of the public health are ample, and while by implication authority is con-

ferred to restrict by suitable regulations the manner in which certain employments deemed offensive and injurious shall be exercised, a board of health, in the absence of legislative sanction, cannot exact a bond as security for their performance as the absolute prohibition of the business, to be followed by pecuniary forfeiture if it is continued unlawfully, must be treated as providing exclusive penalties for their violation. R. L. c. 75, § 94. *Sawyer* v. *State Board of Health,* 125 Mass. 182. *Lowell* v. *Archambault,* 189 Mass. 70, 73. See *Hawthorn* v. *People,* 109 Ill. 302.

*Decree affirmed.*