SAMUEL H. DURGIN & others *vs.* LAURENCE MINOT & others.

Suffolk.    March 19, 1909. — June 24, 1909.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Constitutional Law*, Police power.    *Board of Health*, Municipal.    *Way*, Private. Boston.

St. 1894, c. 119, which undertakes to confer on the board of health of the city of Boston the arbitrary power to adjudge a private passageway injurious to the public health, and then to compel the owner or owners, instead of abating the nuisance in any proper manner, to pave or lay the roadbed as the board of health direct, is not a reasonable exercise of the police power and is unconstitutional.

BILL IN EQUITY, filed in the Superior Court on July 20, 1908, by the members of the board of health of the city of Boston, to compel the defendants as the owners of a private passageway in Boston, known as Butlers Row, running westerly and southerly from Chatham Row to State Street in Boston, to cause that passageway to be paved with material and in a manner satisfactory to the plaintiffs in accordance with an order made by them under the provisions of St. 1894, c. 119.

Certain of the defendants demurred to the bill on the ground, among others, that the statute, under which the order of the plaintiffs was made, was void and of no effect as in violation of the Constitution of Massachusetts and also of the Constitution of the United States.

The case came on to be heard before *Dana*, J., upon the demurrer. He made an order overruling the demurrer *pro forma,* and, being of the opinion that the question of the constitutionality of St. 1894, c. 119, so affected the merits of the controversy

that the question ought, before further proceedings, to be determined by this court, at the request of the parties reported the case to this court for such determination. St. 1894, c. 119, is quoted and described in the opinion.

*G. A. Flynn,* for the plaintiffs.

*C. A. Williams,* (*G. D. Burrage & W. H. H. Tuttle* with him,) for the defendants.

BRALEY, J. It is not improbable that, by the accumulation of stagnant water or of filth on the surface of the roadbed of a private way which is extensively used, it may become so offensive as to be dangerous to the health of the community. But if this condition is found by the authorities to constitute a nuisance, the board of health under R. L. c. 75, §§ 65, 67, has been delegated ample power to order it abated, although they need not direct the mode of abatement. If the mode is prescribed, the landowner or occupant, after notice, need not follow it, but may do away with the cause of complaint in any feasible and effectual manner. *Belmont* v. *New England Brick Co.* 190 Mass. 442, 445, and cases cited. Yet when the order is not complied with, the board under § 69 can cause the nuisance to be removed at the expense of those who are found to be responsible for its existence or continuance. *Salem* v. *Eastern Railroad,* 98 Mass. 431. Plainly, so long as the way described in the bill was not detrimental to the public health, no restraint or regulation as to its use or maintenance was necessary, and, if a noxious condition calling for action by the public authorities existed, a remedy had been provided. It may be said that, if there were various owners upon whose lands collectively and from the same source a nuisance existed, they could not be joined in one order, but each should be ordered to abate the nuisance on his own land. But, if so, the remedy would be no less effective, as the form of procedure could be adapted to reach them either jointly or severally. *Cambridge* v. *Munroe,* 126 Mass. 496, 502.

It was while similar provisions found in Pub. Sts. c. 80, §§ 16, 21 and 23, were in force, that the St. of 1894, c. 119, was enacted. By § 1, "Whenever the board of health of the city of Boston shall adjudge that the public health requires and shall order that the surface of any private passageway in said city

shall be paved or otherwise provided with a roadbed, the owners of said private passageway shall forthwith pave or lay said roadbed in accordance with said order and in a manner and with materials satisfactory to said board," and by § 3, "Any justice of any court having jurisdiction in equity may, on the petition of the board of health of said city, enforce the provisions of this act by any proper process or decree." The demurrants, who have been ordered to pave a passageway connected with their estate with materials satisfactory to the plaintiffs, contend that the statute is unconstitutional.

In the exercise of the police power upon which the statute rests, while in the first instance the Legislature as a co-ordinate branch of the government must determine whether a proposed law is within the Constitution, its determination is not final, but is subject to review by the courts. Const. Mass. c. 1, art. 4. *Talbot* v. *Hudson*, 16 Gray, 417. The limits within which such enactments are valid has been often considered, but no general definition has been attempted. See *Sawyer* v. *Davis*, 136 Mass. 239; *Train* v. *Boston Disinfecting Co.* 144 Mass. 523; *Miller* v. *Horton*, 152 Mass. 540; *Taft* v. *Commonwealth*, 158 Mass. 526, 547; and *Commonwealth* v. *Strauss*, 191 Mass. 545. In *Sawyer* v. *Davis*, 136 Mass. 239, 243, it was said: "Slight infractions of the natural rights of the individual may be sanctioned by the Legislature under the proper exercise of the police power, with a view to the general good. Grave ones will fall within the constitutional limitation that the Legislature is only authorized to pass reasonable laws. The line of distinction cannot be so laid down as to furnish a rule for the settlement of all cases in advance. The difficulty of marking the boundaries of this legislative power, or of prescribing limits to its exercise, was declared in *Commonwealth* v. *Alger*, 7 Cush. 53, 85, and is universally recognized." But if the enjoyment of private property must be held subordinate to such reasonable regulations as are essential to the peace, safety, good order and morals of the community, yet, under the guise of enactments for its protection, lawful property cannot be confiscated. *Commonwealth* v. *Alger*, 7 Cush. 53. *Commonwealth* v. *Boston Advertising Co.* 188 Mass. 348. *Belmont* v. *New England Brick Co.* 190 Mass. 442.

The demurrer admits that the private passageway was appur-

tenant to the defendants' estates and a part of the freehold, in whose use and enjoyment their rights apparently were exclusive. No reasons are set forth by way of recital to show the specific grounds of the action taken. All that appears is that the board adjudged that the public health required the changes. If, because of its general use by the public as a thoroughfare connecting with the highways into which it opened, the way had become out of repair and emitted noisome odors, authority could have been delegated to the city council to take a co-extensive easement by right of eminent domain, and a street properly constructed and maintained would have removed any source of danger to the public health. Instead, the defendants, had they complied with the order of the plaintiffs, would have been indirectly compelled, at their own expense, to provide such accommodation, upon the ground that the reconstruction merely restrained a harmful use of their premises.

The statute is expressed in the broadest terms. It includes not only ways similar to that described in the bill, but any private way which the landowner may construct on his own premises. If, however, the laying out and building of private passageways in any manner the owner sees fit to adopt is not prohibited, yet, whenever the board in the performance of its functions deems such action to be proper, a reconstruction may be ordered. A statute limiting the height of buildings, which was upheld in the case of *Welch* v. *Swasey*, 193 Mass. 364, is not analogous, as the property affected was left physically intact, and no changes in existing buildings were required. The statute authorizing the abatement of a nuisance where land is wet, rotten, spongy, or covered with stagnant water, rendering it offensive to the residents in the vicinity, or injurious to the public health, furnishes a closer resemblance. But that legislation, while recognizing the right of the community to self-protection, preserves the constitutional guaranty by providing for the award of damages against which benefits may be set off or independently assessed upon estates benefited, where lands are filled or drained and made wholesome. R. L. c. 75, §§ 75–83. *Grace* v. *Newton Board of Health*, 135 Mass. 490. See *Cavanagh* v. *Boston*, 139 Mass. 426, 434.

A right of way also is property, and, if the enjoyment of its

convenience may be subjected to reasonable regulations for the protection of the health of the community, the easement cannot be arbitrarily restricted so that practically it is destroyed, in the interest of the public, without providing indemnity. Declaration of Rights, art. 10. The present statute, without even providing that directions may be given to cease using the way until the conditions complained of have been remedied, purports, through changes which may be ordered, to authorize the impairment of the natural right inherent from ownership freely to use property not of itself obnoxious to the general welfare. It is not an unreasonable inference that cases might arise where the landowner would prefer to discontinue, or to abandon the way altogether, rather than to bear the required outlay; but no alternative is given after the board has issued its order. While by § 2 a hearing must be granted to an objecting owner, and if he refuses compliance with the order the plaintiffs under § 3 must resort to the court for a decree of enforcement, their adjudication that a nuisance exists cannot be revised. *Stone* v. *Heath*, 179 Mass. 385. The defendants, even if they have not been deprived of either title or possession, nevertheless are prohibited from availing themselves of an unconditional advantage for which the way was designed. In effect, the judgment of the board becomes a condition, upon performance of which the defendants shall be permitted to continue its use. Under the most liberal interpretation, the act confers the arbitrary power to adjudge a private passageway injurious to the public health, and then to compel the owner or owners, instead of abating the nuisance in any proper manner as the necessity may demand, to pave, repave, or lay out the roadbed permanently as the board of health directs. The way, however, still remains a lawful private easement, while the defendants are subjected to a large expenditure which in the ordinary maintenance of their estates, or even in compliance with an order for abatement, might be wholly unnecessary. The plaintiffs urge that in a broad and general sense it is possible so to construe the statute that, even then, there has been no infringement of vested rights, but only the imposition of a lawful regulation in the use of land, not exceeding the limitations, which in one form or another have been recognized as authorized for the prevention of a manifest danger

in the interest of the public. *Nickerson* v. *Boston*, 131 Mass. 306. *Commonwealth* v. *Roberts*, 155 Mass. 281, 282. But in our opinion, for the reasons stated, such a construction would sanction an unreasonable restriction upon the rights of the citizen in the ownership, and use of real property as they stood at common law. See *Murdock* v. *Stickney*, 8 Cush. 113; *Brigham* v. *Edmands*, 7 Gray, 359, 363; *Morse* v. *Stocker*, 1 Allen, 150; *Hersey* v. *Chapin*, 162 Mass. 176; *Bent* v. *Emery*, 173 Mass. 495; *Otis Co.* v. *Ludlow Manuf. Co.* 186 Mass. 89, 95; *Commonwealth* v. *Boston Advertising Co.* 188 Mass. 348; *Belmont* v. *New England Brick Co.* 190 Mass. 442, 448.

The demurrer, therefore, must be sustained, and the bill dismissed.

*Decree accordingly.*