JOSEPH NICKERSON *vs.* CITY OF BOSTON.
SAME *vs.* SAME.
SAME *vs.* MAYOR AND CITY COUNCIL OF BOSTON.

Suffolk.   March 7, 8. — June 29, 1881.   COLT, ENDICOTT & DEVENS, JJ., absent.

The St. of 1873, c. 340, authorizing the city council of Boston to order the owners of lands situated in a certain district "to raise the grade of their said lands, filling up the same with good materials to such permanent grade as may be deemed necessary by the board of aldermen in order to secure a complete drainage thereof, so as to abate and prevent nuisances, and to preserve the public health of the city," and, if the owner of such lands fails to comply with the order, to fill up the land, "and all necessary expenses incurred thereby shall constitute a lien upon the lands filled," is constitutional; and, under it, the

whole expense of filling the land is to be borne by the owner, without regard to the question whether the land is benefited by such filling.

In pursuance of the St. of 1873, *c.* 340, authorizing the city council of Boston to order the owners of lands within a certain district, "or any of such owners," to raise the grade of their lands "to such permanent grade as may be deemed necessary by the board of aldermen," the board of aldermen passed an order, "that the grade of the cellars, back yards and vacant lots of land included within the district" named in the statute "is hereby established at twelve feet above mean low water;" and the city council passed an order that the owners of land within the district raise the grade of their lands, "or such portions thereof as are below the grade established by the board of aldermen," to the grade as established by the above order of that board. Upon the land of a person in this district there was a stone building used as a factory, which was built on piles and had no cellar under it. The grade of the lower floor of the building and of the land under it was below the grade established by the above order. The city filled his land outside of the building, but did not fill under or raise the building. *Held,* that the order of the city council did not include the land upon which his factory stood; and that he had no legal ground to complain of the assessment. *Held, also,* that it was no objection to the validity of the assessment that it was made upon each of three distinct lots of land separately for the expense of filling that lot, instead of a single assessment upon all of the petitioner's land in the district.

MORTON, J. The city council of the city of Boston, acting under the St. of 1873, *c.* 340, assessed certain sums upon lands of the petitioner situated in the district therein described, as the necessary expenses of filling said lands to the grade adopted by the board of aldermen. The petitioner, being dissatisfied with the assessment, applied by a petition to the Superior Court for a jury to revise the assessment under § 3 of the statute, and at the hearing thereon alleged exceptions to several rulings of the court, which are now before us for consideration. He also brought in this court a bill in equity to restrain the city from proceeding to enforce the assessment, and a petition for a writ of certiorari to quash the proceedings of the city council. The principal questions are the same in each of the three cases, and they may therefore be considered together.

1. By the statute, the city council are authorized to order the owners of lands situated in the district described therein "to raise the grade of their said lands, filling up the same with good materials to such permanent grade as may be deemed necessary by the board of aldermen in order to secure a complete drainage thereof, so as to abate and prevent nuisances, and to preserve the public health of the city," and, if the owner fails to comply with the order, to fill up the land and assess the necessary

expenses, which shall constitute a lien upon the land. The statute itself defines the purpose of its enactment and indicates its character. It is not a statute to levy a tax, but its object is to abate and prevent nuisances, and to preserve the public health. It belongs to that class of police regulations to which private rights are held subject, and is founded upon the right of the public to protect itself from nuisances, and to preserve the general health. The authority of the Legislature to pass laws of this character is too well settled to be questioned. *Taunton* v. *Taylor*, 116 Mass. 254. *Salem* v. *Eastern Railroad*, 98 Mass. 431. *Wright* v. *Boston*, 9 Cush. 233. The objection of the petitioner that the law is unconstitutional cannot therefore be sustained.

2. The statute provides that, if the owner of land fails to comply with the order, the city council shall proceed and fill the land, and " all necessary expenses incurred thereby shall constitute a lien upon the lands filled." It contemplates that the whole expense is to be borne by the landowner. The provision of § 3 that, upon application for a jury, the expenses are to be assessed in the same manner as betterments may be assessed, was intended to regulate the form of proceedings, and not to authorize the jury to assess anything less than the whole expense, or to act upon different rules and principles from those upon which the city council are to act. The duty which the city council or the jury has to perform, after the land is filled, is not to adjudicate how much the land is benefited, but only to ascertain and assess upon each tract of land the amount which has been expended upon it. *Farnsworth* v. *Boston*, 121 Mass. 173. It follows that the evidence, offered by the petitioner in the Superior Court, that his estate was not benefited by the work done upon it, was properly excluded; and that his request for an instruction that the jury should not assess an amount exceeding the actual improvement to his land caused by the filling was rightly refused.

3. The statute is not imperative that the city shall fill all the lands in the defined district to the same grade. The city council is authorized to order the owners of lands within the district, " or any of such owners," to raise the grade of their lands to such permanent grade as may be deemed necessary by the board

of aldermen. The power is given to the aldermen to determine what the grade or grades shall be, and what part of the lands shall be filled up, in order to secure drainage and preserve the public health.

In the execution of this power, the board of aldermen passed an order " that the grade of the cellars, back yards and vacant lots of land included within the district described in chapter 340 of the acts of the year 1873 be and the same is hereby established at twelve feet above mean low water," and the city council passed an order that the owners of land within the district (specifying them) " raise the grade of their said lands respectively, or such portions thereof as are below the grade established by the board of aldermen, by filling the same with good clean gravel, earth or ashes to the grade of twelve feet above mean low water as established by an order of the board of aldermen approved September 1, A. D. 1873." This order of the city council refers to the order of the board of aldermen, and by a fair construction includes only the lands which are embraced in that order.

At the time these orders were passed, there was upon the petitioner's land a large stone building used as a cordage factory, covering about six thousand square feet of land. It was built on piles, and had no cellar under it. The grade of the lower floor of the factory was ten feet, and that of the land under it eight and a half feet above mean low water. The city filled the petitioner's land outside of the factory building, but did not fill under the factory, nor raise the building; and he contends that, as it has not filled the whole of his land to the grade established by the board of aldermen, the assessment is wholly invalid.

The language of the order of the board of aldermen is peculiar. If the purpose had been to direct that the whole of the land in the district should be raised, the most natural language would be " all the lands within said district." Instead of this, the order directs that " the grade of the cellars, back yards and vacant lots of land included within the district " shall be twelve feet above mean low water. This language does not include the land upon which the cordage factory stands. It is to be presumed that it was used intelligently, and for some purpose which seems to have been to exclude the stone factory. We are not

at liberty to inquire into their reasons for the exclusion; possibly it may have been because they deemed that to require the petitioner to raise his factory, or the grade under it, would be an undue hardship upon him not required by the public exigency. Whatever may have been the reasons, it was within their discretion to embrace in their order such parts of the lands within the district as they saw fit. As the order of the city council directing the owners to fill the lands, and the subsequent order directing them to raise the buildings, were, by their fair meaning, confined to such lands and buildings as were included in the order of the board of aldermen, the positions taken by the petitioner fail, and he has no legal ground to complain of the assessments.

4. The objection that the assessment should have been a single one upon all the land of the petitioner in the district cannot be sustained. There were in fact three distinct lots, separated by public or private streets, and the assessment was properly made upon each lot separately for the expense of filling that lot.

The view we have taken renders it unnecessary to consider the questions argued at the bar as to the proper remedy of the petitioner. Not having been aggrieved, he is not entitled to relief in any form of action. The result is that the petition for certiorari and the bill in equity must be dismissed, and the exceptions alleged to the rulings of the Superior Court must be

*Overruled.*

*O. W. Holmes, Jr. & W. A. Munroe,* for the petitioner.
*E. P. Nettleton,* for the respondents.