THE STATE, HARRY W. MORFORD ET AL. v. THE BOARD OF HEALTH OF ASBURY PARK.

1. Under the provisions of the acts of February 22d, 1888, and March 29th, 1892, the board of health of Asbury Park has no power to restrict the owners of a stable to the mode of laying a stable floor prescribed by an ordinance of the board. The owners have the alterna-

tive of resorting to any other method which will secure the sanitary condition of the stable, but by departing from the prescribed method they take the risk of creating a nuisance.

2. If the stable is a nuisance, the owners must be prosecuted for maintaining a nuisance and not for failing to comply with the plans specified in the ordinance.

On *certiorari* to review an ordinance of the board of health of Asbury Park.

Argued at November Term, 1897, before Justices VAN SYCKEL, DIXON and COLLINS.

For the prosecutors, *Hawkins & Durand.*

For the defendants, *Samuel A. Patterson.*

The opinion of the court was delivered by

VAN SYCKEL, J. The controversy in this case relates to the validity of the following ordinance certified into this court:

"Be it ordained by the board of health of the borough of Asbury Park.

"Sec. 43. Every stable or building which may be hereafter constructed or reconstructed in the borough of Asbury Park, in which any horse, mule or cow is kept or stabled, shall be so constructed and drained that no fluids, excrement or refuse liquids shall flow upon or into the ground. All of the surface of the ground, beneath every stall, in every such building, and for a distance of at least four feet in the rear of every such stall shall be covered and protected from pollution by a water-tight floor or covering, which shall be constructed as follows: Where the said water-tight covering rests directly upon the ground surface, the said covering shall consist of concrete, made with finely-broken stone, one part; sharp sand, one part; hydraulic cement, one part, or coarse gravel, two parts; hydraulic cement, one part; to be laid at least three inches in thickness. Upon this concrete founda-

tion, a layer at least two inches in thickness of best asphalt; or a layer at least two inches in thickness of coal-tar concrete; or a layer at least two inches in thickness of cement concrete made with sharp sand, one part; best Imperial Portland cement, one part, shall be laid.

"When the water-tight covering is not in contact with the surface of the ground, it shall rest upon joist or floor beams three inches by ten inches, laid twelve inches from centres, and it shall consist of spruce or yellow pine planking, two inches thick and six inches wide, with beveled edges, and it shall be closely laid so that the joints shall be V-shaped, and be open at the top one-quarter of an inch. Said joints shall be calked with oakum and be made water-tight. Every such water-tight covering shall be laid upon a grade not less than one-eighth of one inch to each foot, and shall be so drained that all fluids which may fall upon it will be conveyed to a street sewer or otherwise disposed of subject to the terms of a permit from this board. Portable wooden racks shall be placed upon all such asphalt, coal-tar concrete or cement concrete floors within said stalls. Said wooden racks or floor coverings shall be constructed of spruce strips, two inches in thickness, made in two sections, and they shall be so placed that they may be readily removed for cleaning.

"No refuse liquids nor any fluid excrement shall fall upon or flow or soak into the ground beneath or adjoining any stable or building which is already erected in the borough of Asbury Park, and in which any horse, mule or cow may be kept or stabled. Whenever the floor of any stable or building already erected and in which any horse, mule or cow shall be kept or stabled is not water-tight and is not so graded and drained that all refuse fluids which may fall upon it are quickly carried to a street sewer or otherwise disposed of in accordance with the requirements of this section, then the owner of every such stable or building shall, within thirty days after having received notice from this board, cause the floor of every such stable and building to be relaid in conformity with the requirements and specifications contained in

this section. All of the solid excrement of animals which may accumulate on any premises in the borough of Asbury Park, or which is stored thereon, shall be placed upon a water-tight floor, in accordance with the terms of a permit from this board, and all such excreta shall be protected from sun and rain.

"Any person or persons or corporation who shall offend against any of the provisions of this section shall forfeit and pay a penalty of one hundred dollars."

The board of health derives its power from the following legislative acts :

By the act of February 22d, 1888 (*Gen. Stat., p.* 1642), boards of health are given power to adopt ordinances to compel, prescribe, regulate and control the plumbing, ventilation and drainage of all buildings, public and private, and the connection thereof with outside sewers, cesspools or other receptacles, &c., and to secure the sanitary condition of all buildings, public and private.

Again, by the act of March 29th, 1892 (*Gen. Stat., p.* 1644), power is given to regulate the keeping of all kinds of animals, and to regulate and control the accumulating of offal, and to secure the sanitary condition of all public buildings, and to protect the public water-supply, and to prohibit and remove any offensive matter or abate any nuisance in any place, public or private.

The act of 1888 also requires plans for the plumbing, ventilation and drainage of buildings to be submitted to the board of health for inspection and approval.

While the courts fully recognize the importance of the powers granted to boards of health and give them a liberal construction, such boards will be confined in their interference with the lawful business of any individual to such interruptions and regulations as may be reasonably necessary to enable them to abate any nuisance he may create in conducting it. *Weil* v. *Ricord*, 9 *C. E. Gr.* 169.

The prosecutors insist that the statutes under which boards of health are constituted do not empower them to prescribe

the manner in which stable floors shall be laid with the strict-ness and particularity contained in the certified ordinance, and that it is therefore unreasonable and void.

In *Gregory* v. *City of New York*, 40 *N. Y.* 273, the board of health had power to carry into full execution whatever the health and safety of the citizens required. The New York court held that in the exercise of such authority the board could not order generally that all sinks and privies be removed as nuisances, but must find the existence of the nuisance as a fact, and exercise a specific judgment as to the necessity for removal.

The Massachusetts statute in general terms authorizes the boards of health to order the owner or occupant of premises at his own expense to remove a nuisance.

In *Watuppa Reservoir Co.* v. *Mackenzie*, 132 *Mass.* 71, the Supreme Court denied the power of the board to prescribe the exclusive manner in which it should be removed, namely, by filling with gravel, earth or some proper material to the satisfaction of the board, the flat lands which caused the alleged nuisance. The court declared that the owner had the right to adopt the alternative of excavating or dredging the flats, or keeping them covered with water.

This ruling was in conformity to the view which prevailed in *Salem* v. *Eastern Railroad Co.*, 98 *Mass.* 431, where the owner was not restricted to the mode prescribed by the board of health for removing a nuisance.

In *Health Department* v. *Lalor*, 38 *Hun* 542, the statute provided that the drainage and plumbing of all buildings should be executed in accordance with plans previously approved in writing by the board of health, and, in consequence of such specific authority, the owner of property was prohibited from departing from the plan so approved.

It is well settled that in order to uphold the action of boards exercising a special statutory jurisdiction, authority for it must be found in the positive law.

In our statutes, before referred to, the power is given in general terms to the board of health to pass ordinances to

regulate the drainage of stables. There is no language which authorizes the board to prescribe a mode to which stable-owners must rigidly conform. On the contrary, the act of 1888 expressly recognizes the right of the stable-owner to submit plans for drainage to the board for approval, and this negatives the idea that an ordinance may lawfully be adopted which will deprive the owner of that privilege. The conclusion which results from this view of the statute is, not that the ordinance is void, but that the owner is not restricted to the manner of laying the floor which is prescribed by the ordinance.

The ordinance stands as a protection to those who conform to it. If the owner secures the sanitary condition of his building by adopting some other plan, he is not amenable to prosecution. In departing from the directions contained in the ordinance, he takes the risk of creating a nuisance. If the plan he resorts to is a failure he may be held for the penalty, not on the ground that he has not conformed to the plan specifically set out in the ordinance, but on allegation and proof that his stable is a nuisance.

Whether in this case the complaint is in such form, and the ordinance so framed, that upon proper proof the penalty could lawfully be imposed upon the owners of the stable, it is not necessary to decide.

The justice before whom the proceedings below were had convicted the owners of the offence of violating the ordinance, and imposed the penalty for that alleged offence, and not for maintaining a nuisance. They may have violated the ordinance without committing the offence of creating a nuisance. No conviction could lawfully have been had except for maintaining a nuisance.

The judgment below must therefore be set aside.