# Spear *v.* Ward, *et al.*

### Bill to Enjoin an Ordinance.

(Decided January 11, 1917. 74 South. 27.)

1. Municipal Corporations; Legislative Authority.—The legislature has authority to authorize municipalities to pass ordinances relating to any of the subjects of municipal regulation except such as may be inhibited by the Constitution, or our municipal form of government.

2. Same; Police Power; Sewer System.—The preservation of the public health by the installation and maintenance of sanitary sewerage system and closets is within the police power of government and the inhabitant of the municipality holds his individual rights to property and liberty subject to this governmental power.

3. Same; Ordinances; Validity; Presumption.—In the absence of a showing that statutes and ordinances dealing with and regulating the preservation

of public health by the installation and maintenance of closets and sanitary sewerage systems and the provisions for their enforcements are unreasonable, arbitrary, unduly oppressive or inconsistent with the legislative policy of the state, the courts will presume in their favor that they are necessary, proper and valid and before striking them down it must be made to appear to the courts that this power has been transcended or abused; the special provisions and the extent of such ordinances being matters left in large measure to the judgment and discretion of the municipal authorities.

4. Same.—Although the necessity and propriety of a particular city ordinance in the exercise of the police power is primarily a legislative one, yet whether a given ordinance is reasonable and not arbitrary, and consistent with the policy of the State as to its municipal government is often a question for the courts.

5. Same; Nuisance; Power to Abate.—Municipal authorities have power to prevent and abate a nuisance, but in the exercise of such power they cannot declare a lawful business or trade to be a nuisance and abate it, when such business, trade or thing is not in law or fact a nuisance or is not carried on or operated in such manner as to be likely to become a nuisance.

6. Same; Injurious to Health; Abatement.—Municipal authorities not only may exercise the police power of the state to preserve the public health, but the law enjoins on them the duty to promptly abate or remove all nuisances calculated to affect the public health.

7. Same; Police Power; Destruction or Confiscation of Property.—While private property must be held subordinate to the police regulations of the city, lawful property cannot be confiscated or destroyed under the mere guise of police regulations.

8. Same; Police Ordinance; Validity.—Under sections 1292-1293, Code 1907, the ordinance attacked in this case was an authorized police regulation and not void as amounting to an unwarranted taking or confiscation of an owner's property under the pretext of exercising a police regulation; the amendment to section 1293 wrought by Acts 1909, p. 175 not taking away any of the powers of the city in this respect.

APPEAL from Jefferson Chancery Court.

Heard before Hon. A. H. BENNERS.

Bill by J. H. Spear against George B. Ward and others. From an order denying temporary injunction, complainant appeals. Affirmed.

The following is the ordinance referred to in the opinion: Section 1. Be it ordained by the city commission of the city of Birmingham, that whenever in the judgment of the city commission it shall be deemed necessary or expedient for the protection of the public health to require the owner of any property in the city of Birmingham to install and connect water closets with the sewerage system of said city, the city commission may in addition to the present regulations or in lieu thereof adopt a resolution declaring that in the opinion of the city commission it is necessary and expedient that said work be done, which resolution shall

[Spear v. Ward, et al.]

give the name of the owner or owners of the lot, the lot and block number, and the survey in which the same is situated, and shall describe the location at which said water closet shall be installed, and shall describe the character of the work and the quality of the closet, including necessary water pipe lines, to be installed, and shall set forth the estimated cost of providing and installing same. The resolution shall also fix a day for the hearing of the property owner, which day shall not be less than twenty days after the adoption of said resolution.

Sec. 2. Be it further ordained, that upon the adoption of said resolution the city clerk shall issue a notice to the property owner named in said resolution, which notice shall set forth the resolution so adopted, and shall notify the property owner to appear, either in person or by counsel, before the city commission on the day named in said resolution, to show cause, if any there be, why he should not be peremptorily required to forthwith construct said water closet at the place mentioned in said resolution at his own expense, which notice shall be served upon the property owner by the chief of police or by any police officer by leaving a copy of said notice with said property owner, and it shall be the duty of said police officer making said service to make return in writing upon the notice to the city, which notice shall be served at least ten days before the day fixed, in said resolution for hearing the same.

Sec. 3. Be it further ordained, that upon the day fixed in said resolution, for hearing the property owner's objections, the city commission shall proceed to hear any objections or defenses which the property owner may make in writing, and hear all evidence which the property owner may offer in support of any protest or objection so made: Provided that if said property owner shall fail to protest in writing, which protest shall be filed with the city, the city clerk, or with the commission, on the hearing of said resolution, he shall be held to have consented to the making of the connections in the manner hereinafter provided.

Sec. 4. Be it further ordained, that upon hearing said resolution the city commission shall have power to peremptorily order by resolution the said property owner to make such connections within ten days thereafter.

Sec. 5. Be it further ordained, that in case of a failure to install or connect the said water closet with the sewerage system

of the city of Birmingham, within ten days after the peremptory resolution ordering the same shall have been adopted, it shall be the duty of the plumbing inspector of the city of Birmingham to install on said premises of said property owner a proper water closet, with necessary water supply line and connect the same with the sewerage system of said city at the expense of the owner, the cost thereof to be a lien upon the property in favor of the city of Birmingham, to be collected as other debts are collected or liens enforced: Provided, however, that the closets and water pipe line installed shall be of the kind designated in the original resolution, provided for in section 1 hereof, and the costs of such installation shall not exceed the sum estimated in said original resolution: And provided, further, that the amount of such costs shall bear interest at the rate of 8 per cent. from the day of the completion and installation as certified by the president of the city commission, as hereinafter provided.

Sec. 6. Be it further ordained, that upon the completion of the installation and connection of such water closet and water pipe line under the provisions of this ordinance, the president of the city commission shall prepare, or cause to be prepared, a statement in writing setting forth the name of the owner of such property and a description of the property on which such improvement has been made, together with the cost of such sanitary connection and installation of such closet and water pipe line, which statement shall be signed by the president of the city commission in his official capacity and shall be filed with the probate judge of Jefferson county for record in the mortgage records of said county. The filing of such statement shall operate as notice of the existence of the lien from the date of its filing.

Sec. 7. Be it further ordained, that any person whose property shall have been assessed under the provisions of this ordinance shall have the right to pay said assessment in cash at any time within thirty days after the amount of such assessment shall have been ascertained by resolution adopted by the city commission, notice of which shall be given to the property owner by registered mail at his last-known address: Provided, however, that the property owner shall also have the right in lieu of paying said assessment in cash, as hereinabove provided, to pay the same in monthly installments, each installment to equal one-twentieth of the principal amount of the assessment, and at

the time of paying such monthly installment the property owner shall also pay the interest on the unpaid balance from the date of the last preceding payment to the date upon which the monthly installment is paid: Provided, further, that if such property owner shall fail to pay the principal in cash within thirty days after such notice that said assessment has been ascertained and fixed, or shall fail to pay any monthly installments when due, and the same shall remain in default for thirty days, then at the option of the city the entire amount shall become due and payable, and it shall be the duty of the city comptroller to proceed to collect the same and to enforce the payment in any court having jurisdiction, or by sale as provided by law, for foreclosing street improvement assessment liens.

Sec. 8. Be it further ordained that the notice of lien provided for in section 6 of this ordinance shall not be filed for record in the office of the probate judge of Jefferson county until the property owner shall have been given notice by registered mail, addressed to his last-known address, of the fact of the completion of such installation and the amount of the assessment as provided in section 7 of this ordinance. At any time within five days after said notice shall have been deposited in the post office at Birmingham, Ala., in accordance with the provisions of this section, such property owner shall have the right to file in writing with the city clerk any protest or objection against the material used, the manner in which the work is constructed, or the cost of such assessment, and it shall be the duty of the city commission at its next regular meeting, after the filing of such protest, to hear said protest and any evidence which the property owner may offer, and it may either confirm, modify or repeal the resolution fixing the assessment.

Sec. 9. Be it further ordained, that if such property owner fails to protest within the time and manner hereinabove stated, he shall be held to have consented to such assessment.

Sec. 10. Be it further ordained, that any property owner feeling himself aggrieved by the action of the commission in overruling any protest so filed, either in whole or in part, may within two days after such assessment shall have been finally fixed, appeal to the circuit court of Jefferson county, Ala., or such other inferior court as may hereafter be created, upon giving bond in twice the amount of the assessment with two good and sufficient sureties, conditioned to prosecute such appeal to

effect, and to pay to the city of Birmingham such judgment as the court may render upon the hearing of such appeal.

Sec. 11. Be it further ordained, that upon said appeal being taken it shall be the duty of the city clerk to forthwith send to the court to which the appeal is taken a transcript of the proceedings, including the protest and bond, and said cause shall thereupon be set down for immediate hearing by said court, said court shall thereupon hear the same on the merits and render judgment accordingly.

Sec. 12. Be it further ordained, that in the event such property owner shall not protest, as hereinabove provided, the statement in writing provided in section 6 shall thereupon immediately be filed in the office of the probate judge.

Sec. 13. Be it further ordained, that the provisions of this ordinance shall not apply to any property unless the same is located within two hundred feet of a sanitary sewer.

The suit is to test the validity of an ordinance (No. 370-C), which is intended to compel residents of the city to abandon dry closets and install sanitary ones, and to connect their premises with the sewer system of the city; and which provides that if the owner of the premises fails for a reasonable time after notice to make the connections with the sewer system and to install sanitary closets, then the city shall do so, and the cost of the work shall constitute a lien upon the property of the owner; and further provides for the enforcement of the lien.

The ordinance in question was passed pursuant to an act of the Legislature approved July 25, 1909, entitled "An act to amend section 1293 of the Code, relating to municipal corporations."

Appellant, as a resident and property owner of the city, by his bill seeks to enjoin the authorities of the city from enforcing the ordinance as to certain property of his, situated within the city.

On the hearing of the bill and the answer of respondents the chancellor denied the temporary injunction, and from this order of the chancellor the complainant appeals.

GIBSON & DAVIS for appellant. M. M. ULLMAN and W. A. JENKINS for appellees.

MAYFIELD, J.—It has been decided often by this court that a municipal corporation possesses and can exercise such powers,

and such only, as (1) those which are granted in express words; (2) those necessarily and fairly implied by, or incident to, the powers so expressly granted; and (3) those powers which are essential to the declared objects and purposes of the municipality, which latter class does not include those powers which are convenient, but not indispensable.—*Wetumpka v. Wetumpka Wharf Co.*, 63 Ala. 611; *Eufaula v. McNab*, 67 Ala. 590, 42 Am. Rep. 118; *New Decatur v. Berry*, 90 Ala. 432, 7 South. 838, 24 Am. St. Rep. 827.

(1, 2) The Legislature has the undoubted authority to authorize municipalities and cities to pass ordinances relating to any of the subjects of municipal regulation, except such as may be inhibited by the Constitution or our municipal form of government. The preservation of the public health by the installation and maintenance of sanitary systems of sewers and closets is well recognized as one of the most important duties of municipal governments, and falls clearly within the police powers of government, subject to which the inhabitant and citizen of the municipality holds his individual rights to property and to libetry.

(3) Consequently, statutes and ordinances dealing with and relating to such subjects, together with provisions for the enforcement thereof, will be indulged by the courts, with the presumptions in their favor, as to their necessity, propriety, and validity, in the absence of a showing to the effect that they are unreasonable, arbitrary, unduly oppressive, or inconsistent with the legislative policy of the state. It must be made to appear to the courts that this police power has been manifestly transcended or abused, before courts will set aside or declare void ordinances which are intended to promote the public health. The special provisions and the extent of such ordinances are matters usually, and almost of necessity, left in a large measure to the discretion and judgment of the municipal authorities. They have, of course, no absolute power to pass any arbitrary ordinance which their caprice or whim might desire; but the law does of necessity vest in them judicial discretion to be exercised reasonably, with regard to the circumstances of each particular case, the objects to be accomplished, and the existing necessity of the occasion.

(4) The necessity and propriety of a particular ordinance is primarily a legislative question; but whether a given one (though

one of its kind is authorized) is reasonable and not arbitrary, and is consistent with the state's policy of municipal government, is often a question for the courts.—*Marion (Town of) v. Chandler,* 6 Ala. 899; *Greensboro v. Ehrenreich,* 80 Ala. 579, 2 South. 725, 60 Am. Rep. 130.

(5) Municipal authorities are given the power in this state to prevent and to abate nuisances, but they cannot, in the exercise of this power, declare a perfectly lawful business or trade to be a nuisance, and abate it, when the business, trade, or thing is not in law or in fact a nuisance, or is not carried on or operated in such manner as to be likely to become a nuisance. In other words, such municipal authorities cannot, by their mere ipse dixit, make that a nuisance which is not in fact or in law such, nor can they arbitrarily destroy the property of a citizen, under the pretext of preventing or abating a nuisance. Of course that which is per se a nuisance may be declared a nuisance by municipal authorities, and as such abated as provided by law; but that which is not per se a nuisance may, under certain conditions, become such, because of its location or of the mode or manner in which it is carried on, and then it may be declared such and abated.

(6) As before stated, one of the most important objects of municipal government is the preservation of the public health; and science has demonstrated that nothing contributes more to secure the end than a sanitary system of sewerage and water-closets connected therewith; and the benefits of such a system are largely lost unless the inhabitants of the city can be compelled to connect their premises with the system, and to abandon dry closets and install water-closets. To this end the Legislature has clothed municipalities with the power and authority to pass ordinances, by-laws, etc. The municipal authorities to this extent exercise the police power of the state; and they not only have the power, but the law enjoins the duty and obligation on them, to promptly abate or remove all nuisances by which the public health may be affected, and to thus provide for the safety, comfort, and convenience of the inhabitants. All the inhabitants therefore have an interest in seeing that proper ordinances are passed, as well as that, when passed, such ordinances are enforced against all, as the failure to conform thereto by a few may inflict injury and ill health upon the many. There are times when the public health is the object of paramount concern, and

[Spear v. Ward, et al.]

the law wisely lodges in municipal bodies discretion and power adequate to such emergencies. Such an emergency is shown by the answer of respondents in this case.

(7) Private property must be held subordinate to reasonable police regulations; yet lawful property cannot be destroyed or confiscated under the mere guise of police regulations for its protection. It does not appear to us that in this case there is shown anything which amounts to an unwarranted taking or confiscation of appellant's property, under the pretext of exercising a police regulation, such as was held to be shown in the cases relied upon by appellant. See *Durgin v. Minot*, 203 Mass. 26, 89 N. E. 144, 24 L. R. A. (N. S.) 241, 133 Am. St. Rep. 276; *Phila. v. Prov. L. Ins. Co.*, 132 Pa. 224, 18 Atl. 1114; *State v. Asbury Park*, 61 N. J. Law, 386, 39 Atl. 706; *Eckhardt v. City of Buffalo*, 19 App. Div. 1, 46 N. Y. Supp. 204.

In some of the above cases the municipal authorities had exceeded the powers given by the statute, and in others there was an unreasonable or arbitrary exercise of the power conferred. Neither of these facts is involved in the instant case. It is not contended in this case that the owner did not have notice of the proceedings had against his property, such as was provided for in the ordinance and the statute.

(8) Sections 1292 and 1293 of the Code provide as follows: 1292. "To extend or alter the system of sewerage, and extend the mains wherever, in the opinion of the city or town council, it may be necessary or expedient to do so, and to extend the mains to any point in the county in which it is situated, and for these purposes, the said city or town council shall have and exercise the full rights of eminent domain, and may acquire such lands or easements therein and the uses of such waterways as may be necessary, by the proceedings provided by law for acquiring private property for public uses."

1293: "To regulate water-closets and the construction thereof, and to compel the installation of the same and connection with the sewerage systems of the city or town, and in case of a failure to install or connect, after reasonable notice, then the city or town shall install proper water-closets and connect the same with the sewerage system of the city or town, at the expense of the owner, the cost thereof to be a lien upon the property, to be collected as other debts are collected or liens enforced."

The amendment of section 1293 by the act of 1909 does not take away any of this power or authority, and is of no particular importance in this case. This we hold to be ample authority to the municipality to pass the ordinance in question (which the reporter will set out), and we are not shown by this record that there has been, or that there is threatened, any arbitrary, unreasonable, or unwarranted, exercise of the power and authority so conferred, in this particular case.

It results, therefore, that the chancellor did not err in declining to enjoin the municipal authorities from enforcing the ordinance in question.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.