## Nourse v. City of Russellville et al.

(Decided Jan. 29, 1935.)

526

FELTS & LYNE for appellant.

TAYLOR & MILAM for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

The court has for determination the power of a city by ordinance to condemn and abolish as nuisances all surface toilets, privy vaults, and cesspools by making it unlawful to maintain them, and by requiring that sewage containing human excrements shall be drained into the municipal sewerage system or into sanitary septic tanks. The city of Russellville, declaring the construction of a general sewer system to be necessary, has contracted for the work. The federal government will contribute 30 per cent. of the cost, and a federal agency will purchase bonds for the balance, estimated to be $72,000. They are revenue or self-liquidating bonds; the system and the gross revenues therefrom being pledged as security. Section 2741l-1 et seq., Kentucky Statutes 1930, as amended; section 2741l-43 et seq., Supp. to Statutes (chapter 109, Acts of 1932). See Wheeler v. Board of Com'rs of City of Hopkinsville, 245 Ky. 388, 53 S. W. (2d) 740. Stipulated charges will be made for use of the sewer. A later ordinance, premised upon the declaration that the construction of the sewerage system and the abolition of the structures named are necessary in order to protect the public health and promote the general welfare of the citizens, provided: (1) After the establishment of the system, all owners and occupants of buildings situated upon lots abutting upon any street, alley, or other easement in which there is a line of the system shall connect therewith all sewage drainpipes of such buildings conveying human sewage according to the regulations of the council, and those not so connecting are declared to be unlawful and nuisances; (2) permits for the erection or repair of any building shall be granted only upon evidence that the applicant has provided means for connecting with the system; (3) it shall be unlawful for any person to maintain a privy vault, cesspool, or similar contrivance on the premises abutting the sewers and all such other means of casting or depositing such sewage upon or into the soil or into any surface or percolating stream of water or into any cistern, well,

or sink whereby the soil is contaminated are declared to be nuisances, and shall be abated and removed by the owners or occupants on or before the establishment of the sanitary sewer system now in course of construction; (4) when the building is situated on a lot not abutting a lateral of the system and for that reason may not be connected with it, then and in that event, where there are inside toilets connected with the municipal water system, the drainage shall be into a "Kentucky Septic Tank," constructed according to the specifications of the Kentucky state board of health; where there are no such inside toilets, the sewage shall be connected with a "Kentucky Earth Pit," constructed and maintained according to the specifications of the Kentucky state board of health, which specifications were attached and made a part of the ordinance; (5) the system shall be deemed established upon completion of the sewage treatment or disposal plant; (6) "sewage" as used in the ordinance shall be as defined; (7) a penalty or fine or imprisonment for a violation of the terms of the ordinance. The foregoing is but a close abridgement of the provisions of the ordinance.

The appellant, alleging that he owned property abutting upon a lateral sewer with both a sanitary toilet emptying into a cesspool and an outside servants' toilet, sued to enjoin the city and its officers from enforcing the ordinance and for a declaration of rights for himself and others similarly situated. The evidence shows the appellant also owns other property which does not abut upon a sewer line, and is therefore embraced within the terms of the ordinance covering such. The city justified the ordinance, admitted its purpose to enforce its terms, and joined in the prayer for a declaration of rights. The plaintiff undertook to prove the cleanliness and sanitary condition of his premises and equipment and that there was nothing obnoxious or objectionable about them. It is fair to say that, except for their inherent nature, he proved that fact. The city established the unsanitary conditions and practices in this relation which exist throughout the city generally. These conditions and the topographical and geological formations of and under Russellville and the location and source of the city's water show an unhealthful and unhygienic situation and the probable pollution of the water supply. The decision might well be confined to the specific state of facts and the condi-

tion peculiar to the city, but we are of opinion that municipalities generally may abate nuisances of the character involved and reasonably require a more sanitary disposition of the sewage.

It is the position of the appellant that, although a city of the class of Russellville may have power to regulate the various means for the disposal of sewage and to abate a particular condition as a nuisance upon notice and hearing, it does not have the power by a blanket ordinance to prohibit all but specified methods of disposal nor to destroy property or to invade the owners' right to use his property in this manner. Accordingly, it is argued that the ordinance is arbitrary and exceeds the police powers of the municipality.

We should look to the statutes. The legislature has specifically conferred certain powers relating to the subject before us upon cities of the fourth class, of which Russellville is a member. Section 3490-6 authorizes them to make regulations to prevent the introduction or spreading of contagious or infectious diseases and to make regulations necessary to secure the general health of the inhabitants. Section 3490-7 is as follows:

"To prevent and remove nuisances at the cost of the owners or occupants, or to the parties upon whose ground they exist, and define and declare by ordinance what shall be a nuisance within the limits of the city, and to punish by fine any person for causing or permitting a nuisance."

Section 3579a-1 et seq. authorizes the construction and maintenance of sewer systems, at the expense of the city or of the property holders specifically benefited. And the General Assembly of 1932 enacted a further statute authorizing the construction of sewerage systems under an alternate plan, which is that under which Russellville is proceeding. Chapter 109, Acts 1932, section 2741l-43 et seq., Supp. to Stats. There must also be considered in connection with these specific statutes a portion of section 3490-1, viz.:

"To pass ordinances not in conflict with the Constitution or laws of this state or of the United States."

Also of section 3490-33, viz.:

"Said city council shall have legislative powers to

make by-laws and ordinances for the carrying into effect of all the powers herein granted for the government of the city, and to do all things properly belonging to the police of incorporated cities.''

These several statutes, therefore, clearly and expressly empower the city to abate nuisances and to build sewers and charge the cost of the latter to those who use them. The particular questions, however, are whether the city has the charter right or the inherent power (a) to declare these structures and their use to be nuisances without affording the respective owners a hearing, and (b) to compel attachment to the sewer system. The solution of the problem calls for the consideration of the general law pertaining to such matters along with these statutory enactments.

A municipality receives its life and derives its authority, ordinarily, from the state; the same being granted by express language or by necessary implication. Allen v. Hollingsworth, 246 Ky. 812, 56 S. W. (2d) 530; Reconstruction Finance Corporation v. Richmond, 249 Ky. 787, 61 S. W. (2d) 631. And, though it is generally said that a municipality has no inherent police powers, their authority to declare and summarily abate public nuisances existed at common law under the police powers and has not been impaired by the constitutions, for, if property has in fact been used in violation of the law and is a public nuisance, the owner has no just reason to complain. McQuillan on Mun. Corp. sec. 959; Polsgrove v. Moss, 154 Ky. 408, 157 S. W. 1133; Moll Co. v. Holstner, 252 Ky. 249, 67 S. W. (2d) 1. However that may be as to other things, in respect of public health the powers are usually within the fair intent and purpose of the creation of the municipality, and are deemed reasonably necessary to give effect to authority expressly granted by the Legislature. 43 C. J. 401. The prime function of these units of government is to promote the safety, convenience, comfort, and the common welfare of their citizens by establishing and maintaining those things which tend to do so and by regulating or prohibiting those things which are hurtful. The conservation of public health should be of as much solicitude as the security of life. It is an imperative obligation of the state, and its fulfillment is through inherent powers. The health of a community is the special concern of the local units of gov-

ernment, and to meet local demands there can be no question that the legislature may invest them with ample authority. The protection of public health is uniformly recognized as a most important municipal function. It is not only a right but a manifest duty of a city. Hence it may be said that the power to abate nuisances is a portion of the police power incident to, and necessarily vested in, the municipality by the state. 43 C. J. 207, 377, 401; McQuillan, sec. 959; 20 R. C. L. 389, 391; Maydwell v. Louisville, 116 Ky. 885, 76 S. W. 1091, 25 Ky. Law Rep. 1062, 63 L. R. A. 665, 105 Am. St. Rep. 245.

Turning our thoughts back to the statutes cited, we may observe that it is well settled that statutes relating to these things are to be liberally construed in order to effectuate the purpose of the legislation, and, even when express power has not been conferred upon municipalities to abate nuisances, they have implied power to pass reasonable ordinances relative to such matters. 12 R. C. L. 1268, 1280. Why authorize the construction of a costly sewer system without granting power to require its universal use for the disposition of sewage menacing the entire population? A municipal ordinance adopted under the power granted by the legislature in these matters is regarded as an act of the state within the Fourteenth Amendment of the Federal Constitution. North American Cold Storage Co. v. Chicago, 211 U. S. 306, 29 S. Ct. 101, 53 L. Ed. 195, 15 Ann. Cas. 276. In considering a statute, the terms of which were substantially the same as the ordinance now before us, it was said, in Commonwealth v. Roberts, 155 Mass. 281, 29 N. E. 522, 523, 16 L. R. A. 400:

> "There can be no doubt that the statute in question is within the constitutional powers of the legislature as a police power. It is an act for the preservation of the public health, and relates to the disposal of one of the most dangerous forms of sewage."

The exercise of police powers by any government in a proper case marks the growth and development of the law rather than a tyrannical assertion of governmental powers denied by our Constitution or any other superior authority. The right of property is a legal right and not a natural right, and it must be measured

by reference to the rights of others and of the public. Nebbia v. New York, 291 U. S. 502, 54 S. Ct. 505, 78 L. Ed. 940, 89 A. L. R. 1469. In Mansbach Scrap Iron Co. v. City of Ashland, 235 Ky. 265, 30 S. W. (2d) 968, 969, we wrote:

"The Bill of Rights grants no privileges. It conserves them subject, however, to the dominant rights of the people as a whole. The Supreme Court has many times declared that where the public interest is involved it is to be preferred over the property interest of the individual, even to the extent of its destruction, if necessary. Miller v. Schoene, 276 U. S. 272, 48 S. Ct. 246, 72 L. Ed. 568. This bulwark of liberty is not stagnant or inelastic. The police power—though assuredly exercised in subordination or supplement to the principles of the Constitution—permits progress and makes of the Bill of Rights a growing and living instrument. It seeks to preserve a proper balance between the rights of all the people on the one hand and the rights of the individual on the other."

In Louisville City Ry. Co. v. City of Louisville, 71 Ky. (8 Bush.) 415, 422, it was declared:

"The city government has the general power to so regulate the use and enjoyment of private property in the city as to prevent its proving pernicious to the citizens generally. It may, when the use to which the owner devotes his property becomes a nuisance, compel him to cease so to use it, and punish him for refusing to obey its ordinances or regulations concerning such use. (Ashbrook v. Commonwealth, 1 Bush, 139 [89 Am. Dec. 616].) These powers to interfere with the citizen in the use and enjoyment of his property are indispensable to government. Without them the public would be at the mercy of every man who chose to disregard the safety or comfort of his neighbors."

Under these conceptions of general subordination of private rights to public rights, we have no doubt that the city may enact laws to preserve and promote the health, morals, security, and general welfare of the citizens as a unit, and has a broad discretion in determining for itself what is harmful and inimical. It is sufficient if the municipal legislation has a real, substantial relation to the object to be accomplished, and

its operation tends in some degree to prevent or suppress an offense, condition, or evil detrimental to public good or reasonably necessary to secure public safety and welfare. Tolliver v. Blizzard, 143 Ky. 773, 125 S. W. 509, 34 L. R. A. (N. S.) 890; Com., for Use and Benefit of City of Wilmore, v. McCray, 250 Ky. 182, 61 S. W. (2d) 1043; California Reduction Co. v. Sanitary Reduction Works, 199 U. S. 306, 26 S. Ct. 100, 50 L. Ed. 204.

Of course, no legislative or administrative body can make a nuisance by simple declaration that it is such when it is not as a matter of fact, for it is self-evident truth that the inherent nature of things may not be changed by legislative fiat. And all will further agree that lawful property cannot be invaded or destroyed under mere guise or pretext of police regulation for public protection. But, if there can be an honest difference of opinion in impartial minds, and judgment and discretion are required in determining whether anything is or is not a nuisance within the common law or statutory definition of the term, the determination by the municipality will usually be sustained by the courts. 12 R. C. L. 1273; 20 R. C. L. 390; Dayton v. South Covington & C. St. R. Co., 177 Ky. 202, 197 S. W. 670; L. R. A. 1918B, 476, Ann. Cas. 1918E, 229; C. & O. R. Co. v. City of Bellevue, 239 Ky. 61, 38 S. W. (2d) 943.

Judicature is hedged about with precedents. Sometimes too closely so. Fundamentals do not vary, but understanding and conceptions change. A philosopher has observed:

"Virtues and vices have frequently changed places as life moved on through the ages; witch burning used to be a virtue and lending money at interest a vice."

So the exercise of governmental powers in the interest of the common welfare must be responsive to changing conditions, developing needs, and advancing science. Present-day ideas of general welfare and public demands should control. The obsolete methods of another day and generation must yield within reason to the modern conception and, particularizing, to progressive sanitary measures. If this were not so, the customs of our ancestors would be fastened upon us like a strait-

jacket. 43 C. J. 204, 308; Walcher v. First Presbyterian Church of Norman, 76 Okl. 9, 184 P. 106, 6 A. L. R. 1593; Miller v. Los Angeles Board of Public Works, 195 Cal. 477, 234 P. 381, 38 A. L. R. 1479; Simrall v. Covington, 90 Ky. 444, 14 S. W. 369, 12 Ky. Law Rep. 404, 9 L. R. A. 556, 29 Am. St. Rep. 398.

The science of sanitation has developed and taught much in recent years. It has demonstrated that nothing contributes more to secure the preservation of public health than a sanitary system of sewerage disposal, whether it be the modern sewers or septic closets. The benefits of such system are largely lost, unless the inhabitants can be compelled to abandon the menacing structures and to connect their facilities with the system. The community is to be considered as a whole in the matter of preservation of the health of all inhabitants, for a failure by a few to conform to sanitary measures may inflict ill health and death upon many. A spark of contamination may become a conflagration of disease. So the courts pretty generally hold that a legislative body may declare privy vaults and such unsanitary facilities in thickly settled communities to be nuisances and require their abatement without challenging each one or giving the owner notice and an opportunity to show that it is not in fact a nuisance. Owners are not heard to say that these things are not injurious to health and comfort and that they only become so when not properly cared for, or that their abuse or carelessness alone make them subject to police regulation and repression, for the same might be said of the storage of gunpowder, fire traps, and many other activities and conditions recognized as per se inimical or dangerous in thickly settled communities. Sections 959, 971, McQuillan; 12 R. C. L. 1274, 1280; 20 R. C. L. 425, 427; Gault v. Ft. Collins, 57 Colo. 324, 142 P. 171, Ann. Cas. 1916B, 718; Monroe v. Gerspach, 33 La. Ann. 1011; Theilan v. Porter, 14 Lea (Tenn.) 622, 52 Am. Rep. 173; City of St. Louis v. Nash (Mo. Sup.) 260 S. W. 985.

A leading case directly in point is Harrington v. Providence, 20 R. I. 233, 38 A. 1, 38 L. R. A. 305. Upon reason and a review of many authorities, it was held that municipal legislative bodies may treat or declare privy vaults in thickly settled communities to be nuisances per se and require their abatement without giving to the owners notice or any opportunity to show in

each particular case whether their structure is or is not in fact a nuisance; it being sufficient that the Legislature has so treated them for the public good. And it was further held in connection with the abatement that property owners may be required by ordinance to install and connect water closets with the city sewer system.

The city of Valdosta, Ga., pursuant to authority given it to "enact such rules and regulations for the transaction of its business and for the welfare and proper government thereof," as the mayor and council might deem best, passed an ordinance (held by the state court to be within that delegated power) which required persons and property owners residing upon any street along which sewer mains had been laid to install water closets in their houses and connect the same with the sewer, and declared that such persons should not be permitted to use or keep a surface closet on their premises. One whose property was in a thinly settled part of the city refused to comply with the ordinance, and sought an injunction in the United States courts to prevent the imposition of its penalties. The Supreme Court held that the ordinance did not violate the Fourteenth Amendment of the Constitution, saying:

> "It is the commonest exercise of the police power of a state or city to provide for a system of sewers, and to compel property owners to connect therewith. And this duty may be enforced by criminal penalties. District of Columbia v. Brooke, 214 U. S. 138, 29 S. Ct. 560, 53 L. Ed. 941. It may be that an arbitrary exercise of the power could be restrained, but it would have to be palpably so to justify a court in interfering with so salutary a power and one so necessary to the public health. There is certainly nothing in the facts alleged in the bill to justify the conclusion that the city was induced by any thing in the enactment of the ordinance other than the public good, or that such was not its effect."

Hutchinson v. Valdosta, 227 U. S. 303, 33 S. Ct. 290, 291, 292, 57 L. Ed. 520.

This is sustained by many authorities as an incident to the power to establish, regulate, and control sewers. Sections 972, 1565, McQuillan; 19 R. C. L. 832; Allman v. Mobile, 162 Ala. 226, 50 So. 238; Spear v.

Ward, 199 Ala. 105, 74 So. 27; Fenton v. Atlantic City, 90 N. J. Law, 403, 103 A. 695; Fergus Falls v. Edison, 94 Minn. 121, 102 N. W. 218, 70 L. R. A. 238; Harter v. Barkley, 158 Cal. 742, 112 P. 556; Monroe v. Gerspach, 33 La. Ann. 1011; Nickerson v. Boston, 131 Mass. 306; Carson v. Brockton Sewerage Com'rs, 175 Mass. 242, 56 N. E. 1, L. R. A. 277, affirmed 182 U. S. 398, 21 S. Ct. 860, 45 L. Ed. 1151; Hobbs v. South Bend, 194 Ind. 369, 142 N. E. 854; Paulsen v. Portland, 149 U. S. 30, 13 S. Ct. 750, 37 L. Ed. 637.

Looking to our own cases bearing upon the subject in hand:

In Treasy v. City of Louisville, 137 Ky. 289, 125 S. W. 706, 707, we dealt with an ordinance declaring it unlawful to maintain a privy vault on any lot abutting on a public sewer after sixty days' notice to abate the same. Treasy attacked the ordinance as invalid because it left to the officers to determine whom they would notify. It was conceded that, if the ordinance had prohibited all such structures by a declaration of the council that their existence constituted a nuisance, it would have been a valid exercise of police power. In the course of the opinion the court said:

> "Privy vaults in cities and densely populated settlements are per se a nuisance, and the ordinance, unmistakably, shows a purpose on the part of the council to rid the city of them wherever they abut, front or rear, on a public sewer, and to prohibit the placing of others there."

Construing the ordinance as placing the absolute duty upon the officers to give notice to all persons having vaults so situated without discrimination, the ordinance was sustained. Cf. L. & N. R. Co. v. Commonwealth, 175 Ky. 282, 194 S. W. 313. In City of Ludlow v. Commonwealth, 247 Ky. 166, 56 S. W. (2d) 958, we recognized that a city is criminally liable for permitting sewerage from its system to overflow into the basements because the nuisance was detrimental to the health of the occupants.

In Tipton v. City of Shelbyville, 139 Ky. 541, 107 S. W. 810, 32 Ky. Law Rep. 1123, it was held that the council had the exclusive right of determining whether the construction of sewers was necessary and that its decision was conclusive. See, also, Town of Lagrange

v. Overstreet, 141 Ky. 43, 132 S. W. 169, 31 L. R. A. (N. S.) 951; Polsgrove v. Moss, supra; Baker v. City of Princeton, 226 Ky. 409, 11 S. W. (2d) 94.

Bringing together the controlling factors of express statutes, the general law of interpretation, of the sub-ject-matter, property rights, and the regard for legis-lative discretion, we conclude, as did the trial court, that the ordinace is valid, even though the result may be the loss of many ancient landmarks.

The judgment is affirmed.