(No. 34750.—

THE CITY OF NOKOMIS, Appellant, *vs.* GEORGE SULLIVAN *et al.,* Appellees.

*Opinion filed September 18, 1958.*

KENNETH E. Moss, City Attorney, and J. D. WILSON, both of Nokomis, for appellant.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

An ordinance of the city of Nokomis, enacted in 1952, declares that "the use of any premises in the City of Nokomis in such a manner as to create sewerage thereon

not discharged into the sewerage system is hereby declared to be a nuisance; every water closet or privy connected and used in any building not connected with the sewerage system of said City is hereby declared to be a nuisance, provided that this section shall be inapplicable to premises where connection with the sewerage system is not feasible. Such connection with the sewerage system is hereby declared to be feasible as to any premises abutting any street, alley or other public way or sewer right-of-way in which any line of the sewerage system of the City exists." The ordinance requires that connection with the sewerage system be made within one year after connection became feasible, but not later than January 1, 1954.

By its amended complaint in this case the city alleged the enactment of the ordinance, and that although each of the 29 named defendants is interested as owner or tenant in property so located that connection with the sewerage system is feasible, none of them has made the required connection. It also alleged that "the continuous and re-occurring creation of sewerage within habitations on the afore-described premises and its disposal without complying with the * * * ordinance constitutes a nuisance and is of such a nature that there is no adequate remedy at law provided * * *." The relief requested was a permanent injunction restraining the defendants "from using any water closet or privy, connected with or used in any building, located on the prescribed premises * * * not connected with the sewerage system" of the city.

The defendants moved to strike the amended complaint on the grounds that the joinder of defendants was improper and that the ordinance was invalid. Their motion asserted that the ordinance deprived them of property without due process of law under the State and Federal constitutions, because the city had declared that to be a nuisance which was not a nuisance in fact and because the provision of the ordinance with respect to the feasibility of connections

is unreasonable. It also asserted that the city can not prohibit the use of cesspools because the legislature "has recognized that the proper use under proper conditions of construction and repair of cesspools is a legal use of premises and as such could not constitute a nuisance per se."

The motion to strike was allowed, and when the city elected to stand by its amended complaint decree was entered for the defendants. The city appeals directly to this court upon the trial judge's certificate that the validity of an ordinance is involved and that the public interest requires a direct appeal. (Ill. Rev. Stat. 1957, chap. 110, par. 75.) No brief has been filed in this court on behalf of the defendants.

The attack upon the complaint, in so far as it is based upon procedural grounds, can be quickly disposed of. Joinder of defendants is governed by section 24 of the Civil Practice Act. (Ill. Rev. Stat. 1957, chap. 110, par. 24.) Those parties may be joined "against whom a liability is asserted either jointly, severally or in the alternative arising out of the same transaction or series of transactions, regardless of the number of causes of action joined." It is not necessary that each defendant be interested in all the relief requested. As in the case of joinder of plaintiffs, the objective is "economy of actions and trial convenience," (McCaskill, Ill. Civ. Prac. Act Ann., sec. 24,) and the determining factors are that the claims arise out of closely related "transactions" and that there is in the case a significant question of law or fact that is common to the parties. (See *Johnson* v. *Moon,* 3 Ill.2d 561.) In the present case the dominant question is one of law, the validity of the ordinance, and it is common to all parties. If any genuine issues remain after that common question has been decided, they can be readily handled, without inconvenience or prejudice to the parties, in a single action.

While the constitutional question as to the power of a municipality to require connections with its sewer system

has not heretofore been decided in this State, it has frequently been decided elsewhere. In 1912 the Supreme Court of the United States said, "It is the commonest exercise of the police power of a state or city to provide for a system of sewers, and to compel property owners to connect therewith." (*Hutchinson* v. *City of Valdosta,* 227 U.S. 303, 308, 57 L. ed. 520, 523,) In 1892, in sustaining a statute that required property owners in Boston to make connections with the municipal sewer system, the Supreme Judicial Court of Massachusetts pointed out that this type of legislation "is founded upon the right of the public to protect itself from nuisances, and to preserve the general health." (*Commonwealth* v. *Roberts,* 155 Mass. 281, 29 N.E. 522, 523.) Because of the grave dangers to public health that are involved in the unsanitary disposition of human excrement, the power of municipalities to require property owners to discontinue the use of privies and to connect water closets with municipal sewer systems has consistently been sustained. (*Harrington* v. *Bd. of Aldermen,* 20 R. I. 233, 38 Atl. 1; *Spear* v. *Ward,* 199 Ala. 105, 74 So. 27; *Fenton* v. *Atlantic City,* 90 N.J.L. 403, 103 Atl. 695; *Fristoe* v. *City of Crowley,* 142 La. 393, 76 So. 812; *Nourse* v. *City of Russellville,* 257 Ky. 525, 78 S.W.2d 761; *City of Leeds* v. *Avram,* 244 Ala. 427, 14 So.2d 728; *Schmidt* v. *Village of Kimberly,* 74 Ida. 48, 256 P.2d 515.) Each of these decisions is grounded, either expressly or implicitly, upon the proposition that the continued use of privies and cesspools is a nuisance when a less hazardous means of disposition is available.

In these cases the municipal requirement has been enforced by criminal sanction and by direct abatement at the expense of the property owner. In the present case the defendants' motion to strike took the position that a municipality has no power to declare that to be a nuisance which is not a nuisance in fact. Apparently the thought was that because there are conditions under which privies

and cesspools may be useful facilities, their use can never be prohibited as a nuisance without a showing that the particular privy or cesspool involved is itself noisome, offensive and hazardous to public health. That position is unsound. It has often been pointed out that the benefit to the public health that is afforded by a public sewer system is lost unless all can be required to use it. (*Spear* v. *Ward*, 199 Ala. 105, 74 So. 27; *Nourse* v. *City of Russellville*, 257 Ky. 525, 78 S.W.2d 761.) "It is not necessary that the health officer should wait until a nuisance existed and the public health put in jeopardy before requiring the defendant to connect with the sewer." *Fenton* v. *Atlantic City*, 90 N.J.L. 403, 103 Atl. 695.

Despite their usefulness under some conditions, wooden buildings, and even shingle roofs, can be declared to be nuisances within urban areas. (*King* v. *Davenport*, 98 Ill. 305.) So here, the facility that at one time represented an advance over more primitive methods, can be prohibited when a safer method becomes available. Municipal governments are not required to gamble against public health risks. To protect the public health, as well as to promote public safety, a legislative body may adopt "the most conservative course which science and engineering offer." *Queenside Hills Realty Co.* v. *Saxl*, 328 U.S. 80, 83, 90 L. ed. 1096, 1098.

Frequent efforts to state the precise effect of a municipal declaration that a particular thing or activity is a nuisance have proved unsatisfactory. (See *Laugel* v. *City of Bushnell*, 197 Ill. 20; *Sings* v. *City of Joliet*, 237 Ill. 300; *City of Chicago* v. *Shaynin*, 258 Ill. 69; *City of Bushnell* v. *Chicago, Burlington and Quincy Rrailroad Co.* 259 Ill. 391.) Whatever has been the formula of words used to describe the scope of municipal power, the cases have turned, in the last analysis, upon the court's appraisal of the reasonableness of the municipal action. The ultimate question has been the reasonableness of the questioned use

of the property in the light of all of the surrounding circumstances. (*Dube* v. *City of Chicago,* 7 Ill.2d 313; *Village of Atwood* v. *Otter,* 296 Ill. 70; see Prosser on Torts, 2d ed., chap. 14; Harper and James, Law of Torts, secs. 1.29, 1.30.) In this case, when the relatively small cost of compliance is weighed against the serious risks involved in noncompliance, it is clear that the ordinance is not invalid.

The General Assembly has delegated to cities and villages the power "To define, prevent and abate nuisances." (Ill. Rev. Stat. 1957, chap. 24, par. 23—61.) It has also authorized them to do all acts necessary or expedient for the promotion of health or the suppression of diseases; to compel the owner of any "privy, sewer, or other unwholesome or nauseous house or place, to cleanse, abate, or remove the same, and to regulate the location thereof," and to regulate the use of sewers and cesspools. (Ill. Rev. Stat. 1957, chap. 24, pars. 23—81, 23—90, 23—35, 23—36.) Defendants' motion to strike was apparently based in part upon the proposition that because the legislature has authorized municipalities to regulate privies and cesspools, it has by implication denied the power to prohibit them. The powers in question, however, are granted to all cities, whether or not they have public sewer systems, and regardless of the extent of those systems. That a municipality has been granted power to regulate privies and cesspools when regulation is the only practicable means of control does not, in our opinion, militate against its power to declare them nuisances when a less hazardous method of disposition becomes available.

We hold, therefore, that the ordinance is within the powers granted to the city by the General Assembly, and that the defendants are not deprived of due process under the State or Federal constitution because they are required to connect with the city sewer system.

There remains for consideration the limitation on the scope of the ordinance. It requires that connection be made

only if it is feasible to do so, and it provides that feasibility is to depend upon whether or not the property abuts the line of the sewer. The applicability of the ordinance is thus made to depend upon ability to make the required connection without trespassing upon the property of others or obtaining easements from them. Such a classification relates directly to the cost and the possibility of compliance. Upon the record that is before us it can not be said to be unreasonable.

The circuit court erred in dismissing the complaint. Its decree is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*